The opinion of the Court was delivered by
Nora, J.
There are two questions submitted to the consideration of the Court in this case:
1. Whether the plaintiff, in point of law, was entitled to a verdict ? And,
2. If he was, whether the jury have adopted a correct rule for the estimation of damage ?
The rule of law so often recognized in our Courts, that selling for a sound price raises an implied warranty of soundness of property, is not denied; but it is contended, that it does not apply to this case.
The counsel for the defendant has contended : 1. That when a person Pur°hases aa article, capable of inspection, as rice, flour, &c., -■ and particularly where he has actually inspected it, he is considered as having purchased on his own judgment, and not on the credit of the seller, and therefore can have no recourse if it happens to be unsound or damaged. 2. That where a staple commodity is sold for exportation, the purchaser must always be considered as having bought at his own risk, unless -there has been some actual fraud in the transaction, or an express warranty; and in support of these positions, the case of Vanderhorst & Co. v. David M. Taggert, 2 Bay, 498, is relied on.
The first question may be considered as decided in that ease. The same principle has frequently been recognized in other cases, and I presume if it were now a new question, would be decided in the same way. I consider the doctrine of implied warranty as having relation only to secret defects, which cannot, by ordinary skill and diligence, be discovered, though in the case of Barnard v. Yates, 1 Nott & M’Cord, 142, it seems to have been extended further. If, therefore, this case came within the principle of the case of Vanderhorst & Co. v. Taggart, I should think it ought to be governed by it. But it is well known, that no method has been yet discovered by which packed cotton can be examined, except as to its exterior. It is never attempted nor expected of the purchaser, that he will do more. It is otherwise with rice. The barrels may be, and are usually unheaded, and the article examined throughout. Indeed, I would consider the principle as applying to cotton as far as it is capable of inspection. Wherever, therefore, it appears to be of the same quality throughout, and there is no deception, *699 I should not consider the purchaser entitled to recourse to the seller. But every sale of packed cotton must be considered in the nature of a sale by sample, which amounts to a warranty, that the whole bulk shall correspond with the specimen exhibited.
2. I do not consider the case of Vanderhorst & Co. v. Taggart, as having decided that the purchaser of a ^staple commodity, who [-*541 purchases for exportation, stands on a different footing from other *- purchasers. The judge, who gave the opinion of the Court, went into a very correct train of reasoning, to show that there was no implied warranty in that case; and I concur with him to the whole extent that he has gone. The plaintiff in that case had examined the rice; he had taken it at his own inspection, and on his own judgment. It was uncertain whether it was damaged at the time of the sale, or had become so afterwards. The mischief would be intolerable, and litigation endless, if a seller in such case should be held liable. But in the case now under consideration, there was a positive, palpable fraud. The cotton was injured by pouring water into the centre of the bag, and then enveloping it with good cotton, in such a manner as to elude detection.
It is said there was no proof that the defendant was cognizant of the fraud. But he was the grower of the article. If it was not personally done by him, it was by his servants or agents, for whose conduct he is answerable. Suppose stones or sand should be found inclosed in a bale of cotton, would a planter be excused by denying a knowledge of the fact, and laying it to the charge of his servants ? Were such a principle to be established, the grossest fraud could never be detected. The character of the State is implicated in the abominable impositions that have been practiced upon the purchasers of this article. It would be a reproach to the country, that they should go unpunished. I am not aware of any principle, upon which we can adopt a different rule for foreigners, who come into our market, from that by which our own citizens are governed. It would be literally acting upon the maxim of “ virtus post nummos.” But I cannot consent to stamp so great a stigma upon the front of our judiciary, as to promulgate such a doctrine from the bench. It is equally our duty, and our interest, to afford the most ample security to purchasers, against such frauds and imposition. I entertain no *doubt, therefore, of the liability of the defendant. And I have as r*KA% little doubt, that he would be equally liable in an English Court, L upon the ground of fraud or misrepresentation, where implied warranties are not admitted to the extent that they are in our Courts.
The next question is, what ought to be the rule by which the damages in such cases should be estimated ? ■
Assumpsit is nomen generalissamum, under which a great variety of special cases are embraced. It includes every case by simple contract, whether in the nature of a warranty, a promise to pay money, or an undertaking to do or perform any act from whence a promise, either express or implied can arise. The damages to be recovered must always depend on the nature of the action, and the circumstances of the case.[1] The difference of opinion which seems to exist on the subject, I apprehend has arisen from confounding the distinctions between the different forms *700 of assumpsit. In an action for money had and received, the actual amount of money received, with interest in some cases, should be the measure of damages. In an action for goods, or any specific chattel, sold and delivered, the value of the thing sold ; and so on in all other cases which furnish a standard by which the jury can be governed. But in cases of fraud, and other cases meirely sounding in damages, the jury may give a verdict to the whole amount of the injury sustained, or imaginary damages. An action for a breach of promise to marriage, is an action of assumpsit; yet the jury are as uncontroled in the amount of damages which they may give, as in an action of slander or deceit, even though no actual damage be proved. In Bacon, it is said, that in cases of contract, “if there are any circumstances of hardship, fraud, or deceit, the jury may consider of them, and proportion and mitigate the damages as they please.” 2 Bacon, tit. Damages. And Lord Mansfield says, “that fraud alone may be ground for an assumpsit, where there is no express undertaking, as where a person sells property as sound, knowing it to *5431 *ke otherwise.” Stewart v. Wilkins, Doug. 18. In the case of -* Williamson v. Allison, 2 East, 446, Lord ^llenborough says, “the form of the action, i. e., tort or assumpsit, cannot vary the proof.” The case of Nurse and Barnes, Thomas Raymond, 11, was an action of assumpsit. The plaintiff alleged, that the defendant, in consideration of ten pounds to him paid, promised to let him enjoy a certain mill. It appeared at the trial, that the mill would not let for more than twenty pounds a year, but as it appeared that the plaintiff, by reason of his not having been permitted to enjoy the mill according to the contract, lost a stock which he had laid in, the jury assessed the damages to five hundred pounds. It was holden, that the damages were not excessive. Per Gur. The jury, in assessing damages in this case, were not confined to the sum paid, as a consideration for the enjoyment of the mill, or to the sum which the mill would let for, but had aright to take all the circumstances into consideration. In the case of Peter Cusack v. Des Coudres and Cravat, MS., which was a breach of contract to make titles to a tract of land, the jury gave three hundred dollars damages, although the plaintiff had paid only twenty dollars of the purchase money ; and this Court supported the verdict.
I apprehend, that after all these eases, it can no longer be considered,[1] (as has been somewhat confidently asserted in this case,) that (even) vindictive damages may not be given in an action of assumpsit; and surely it will not be denied that plaintiff may recover the amount of the loss which he has actually sustained. Indeed, I can see no other just rule than that which has been adopted in this case. It cannot be seriously contended, that the seller should merely refund the money which he had received, and leave the purchaser to pay the costs of transportation across the Atlantic, and all the incidental expenses. The expenses of transportation and original purchase money ought not to be the rule, because a depression of price in the foreign market might reduce the ac-*5441 l°ss’ ^ ^reason of the fraud, below those expenses, and -* the seller ought not to be answerable for a loss, to which he had not contributed. Upon the principle of reciprocity, as well as of good *701 faith, the parties ought to be placed npon the same footing they would have been if there had been no deception ; and that is the effect of this verdict.
Starke, for the motion. B. P. M’Gord, contra.
The motion, therefore, must be refused.
Gantt, Johnson and Huger, JJ., concurred.
Richardson and Colcocic, JJ., dissented.

 1 McC. 516.

 See 11 Rich. 255 ; 1 N. & M’O. 213, 240; Chev. 154.