## WOODS v. CRAMER.

1. SALE OF GOODS BY SAMPLE—ACCEPTANCE.—Where goods sold by sample are duly shipped, the buyers are liable for the contract price if the goods came up to sample, or, if not up to sample and so known at the time, were nevertheless accepted.

2. MEASURE OF DAMAGES.—If the buyers refuse to receive and pay for goods for which they are bound by contract, the measure of damages is the difference between the contract price and the net proceeds of a sale made by the sellers on account of the purchasers.

3. STATUTE OF FRAUDS—SALE BY SAMPLE—ACCEPTANCE.—Where goods are purchased by written contract, the statute of frauds has no application, but the question of acceptance may be submitted to the jury to be considered by them in determining whether the buyers had thereby admitted that the goods were equal to samples.

4. MEASURE OF DAMAGES.—The measure of damages in this case could not be the difference between the market value of the goods at the time of acceptance and the net proceeds realized at the sale by the seller, as contended for by the buyer, for that would be a change of one of the essential terms of the contract, without the seller's consent, and besides there was no testimony as to such market value, the buyer having had proposed testimony upon this point ruled out.

5. IBID.—Interest on the amount may be incorporated into the verdict as an element in the measure of damages.

Before FRASER, J., Charleston, March, 1890.

This was an action by R. J. Woods & Co. against Cramer &

Blohme to recover damages for breach of contract of purchase by
defendants.  The judge charged the jury as follows:

*Gentlemen of the Jury:*  This is an action to recover damages
which the plaintiffs allege they have sustained by breach of a
contract.  The contract is alleged to be for the sale of certain car
loads of oats said to have been sold by sample.  The question for
you is whether those goods came up to sample, or whether, if
they did not come up to sample, he nevertheless accepted them.
If he accepted them, notwithstanding that they did not come up
to sample, he is liable to take them and liable for the damages.
The amount sued for is the difference between the amount which
the oats sold for originally and the amount they sold for at auc-
tion, together with the expenses.  That is the case before you,
and I propose now to charge you upon these requests to charge
and to confine myself to them.

The plaintiffs request me to charge: 1. "This is an action
brought to recover damages for the breach of two contracts made
by Kracke & Janssen, as brokers of the plaintiffs, for the delivery
of certain rust-proof oats, and if the jury believe that the plaintiffs
tendered to the defendants the oats required by sample, and the
defendants refused to accept the same, then the plaintiffs are
entitled to recover the loss sustained by them."  I think that is
correct.

2. "The measure of damages, in case the jury find for the
plaintiffs, is the difference between the contract price and the
price for which the goods were afterwards sold, and also all
charges attending said sale and storage, and other expenses after
the goods should have been received by the defendants and before
the sale."  I think that is right.

3. "In a contract for sale for the price of $50 or upwards,
made by brokers, to satisfy the statute of frauds, the memoran-
dum must be in writing, and may be proved by a note of sale
handed by the brokers to the seller, and a note of purchase
handed by the brokers to the buyer, and therefore both the let-
ters of Kracke & Janssen to the plaintiffs and defendants in this
case are evidence of the contract."  I charge you that.

4. "It is a question for the jury, whether the oats shipped by
the plaintiffs to Charleston were accepted by the defendants on

the 13th day of October, 1886, and if the same were then accepted, they must find for the plaintiffs." There must have been an acceptance, not merely an agreement to accept. An acceptance must be some exercise of ownership and some definite action to show that they were accepted. If the jury come to the conclusion that there was only an agreement to accept, then that agreement to accept, in order to amount to a new contract, must be evidenced either by writing or be accompanied by all the evidence and formalities which are necessary to create an original contract. But if there was an actual acceptance, that would alter the case. If the goods were in a house and a man takes the key, that would be an acceptance. To take possession of a watch, a man would have to take the watch in his hand. To take possession of a horse, he would have to turn him into his lot, or take the bridle or have him hitched somewhere. Acceptance is taking possession and control of property.

Q. (By a Juror.) Suppose Mr. Blohme, in his office on the 13th October, told Miller he would take the drafts up, wasn't that tantamount to an acceptance?

(By the Court.) I don't think it would. unless he was bound to take them because they were up to sample. If he told the agent, I will take the goods, you go away, that would be tantamount to his accepting it. But an agreement to accept is not an acceptance.

The defendants ask me to charge: 1. "That where goods are sold by sample, the seller is held to warrant that the goods shall correspond with the sample, both in kind and quality." I charge you that.

2. "That where one has a general agency to sell goods for another, he may sell by sample, and this is a warranty that the goods shall come up to the sample, binding on the principal." I charge you that in that shape.

3. "Under the contract offered in evidence in this case, the defendants were not required to notify the plaintiffs of their refusal of the oats; notice to their agents, Kracke & Janssen, was sufficient." That is correct.

4. "That under the contract in this case, the rise or fall of oats is immaterial, and should not be considered by the jury."

I think it is immaterial whether the oats rose or fell. in the market. The question is, did the parties fulfil their contract? A mere agreement to accept the oats, without some act amounting either to symbolical or actual possession, would not be acceptance. If he put the plaintiffs in position to be injured by saying, I will take the goods, you go off, then he would be estopped from saying he had not accepted them.

Q. (By Mr. Buist.) Will your honor charge the jury on the matter of interest?

(By the Court.) I think the plaintiffs would be entitled to interest, if you find for the plaintiffs.

The jury found a verdict for plaintiffs, and a motion for new trial having been made by defendants and refused, they appealed on the following grounds:

*First.* Because his honor erred in saying to the jury, "The question for you is whether these goods came up to sample, or whether, if they did not come up to sample, he nevertheless accepted them." The judge thus changes the issues from those made by the parties themselves. The plaintiffs' case being that the goods were not accepted, but that they did come up to contract, and should have been accepted. Also, that there was an agreement to accept, which was not performed. And so the jury were prevented from properly considering and passing upon the real issues in the cause, or were misled as to the same.

*Second.* Because his honor erred in charging that, "If he accepted them, notwithstanding that they did not come up to sample, he is liable to take them and liable for the damages."

(*a*) For that the expression, liable for the damages, in the connection in which it occurs, means the damages sued for, that is, the difference between the amount which the oats sold for originally, and the net amount that they brought on the resale; whereas, if the oats were accepted, yet, if they did not come up to sample, the damages would be the difference between the real value of the oats at the time of acceptance and the net amount realized by plaintiffs upon the resale.

(*b*) For that in so charging, the defendants were precluded from any benefit of this defence, that the goods did not come up

to sample, in the event that the jury should consider that they had accepted them; whereas, notwithstanding such acceptance, damages for the breach of the warranty of quality in the sale by sample, was a proper subject for consideration and allowance by the jury.

(*c*) For that in so charging, the judge implied a distinction between an acceptance and a taking of the goods; whereas, if there was an acceptance, the title passed and the goods were taken, and as said charge was calculated to mislead the jury in finding whether or not there was an acceptance.

(*d*) For that in so charging, the judge drew a distinction between an acceptance and the taking of the goods, which was calculated to mislead the jury, inasmuch as an acceptance involves the ownership and custody of the goods, and to suggest that there might be an acceptance without the control and custody of the goods, was calculated to prevent the jury from considering the acts of plaintiffs in maintaining control and custody of the goods and reselling the same, upon the question whether or not there was an acceptance.

*Third.* Because his honor erred in charging that "the measure of damages, in case the jury find for the plaintiffs, is the difference between the contract price and the price for which the goods were afterwards sold, and also all charge," &c.

(*a*) For that such charge was erroneous in case the jury should have found that the oats were not up to sample, but that defendants had accepted them, in which case they might have found for plaintiffs, if the application of the measure of damages required it, and the measure of damages in such case would have been the difference between the value of the goods so falling below sample at the time of acceptance and the net amount realized by vendors on resale.

(*b*) For that said charge withdrew from the jury all consideration of damage to defendants upon a breach of the warranty implied in the sale by sample, in the case of the acceptance of the goods by the defendants.

*Fourth.* Because his honor erred in charging upon the fourth instruction prayed for by plaintiffs in such manner as to approve the said instruction, subject only to his explanation of the mean-

ing of acceptance ; whereas, even if the goods were accepted by defendants, it did not follow that plaintiffs must recover, for if they were not up to sample, the difference in value between them and the contract price would have been a good offset, and in this case might have prevented any recovery by plaintiffs at all.

*Fifth.* Because his honor erred in charging, "If he told the agent, I will take the goods, you go away, that would be tantamount to his accepting it." Whereas, an acceptance could only have been made by taking control of the property, and said charge was calculated to prevent the jury from considering upon the question of acceptance the force and effect of plaintiffs' own allegations, and proves that defendants never accepted, but that plaintiffs stored and resold the goods. Further, that, considered as an agreement to accept, such words do not amount to a valid agreement to accept.

*Sixth.* Because his honor erred in charging that "if he put the plaintiffs in position to be injured by saying, I will take the goods, you go off, then he would be estopped from saying he had not accepted them." For that such a state of facts presents an entirely different case from a case of acceptance.

*Seventh.* Because his honor erred in charging that the plaintiffs would be entitled to interest.

*Messrs. J. Ancrum Simons* and *J. E. Burke,* for appellant.

*Messrs. Buist & Buist* and *John Wingate,* contra.

September 28, 1891. The opinion of the court was delivered by

MR. JUSTICE McIVER. This was an action to recover damages for breach of contract. The plaintiffs claim that on the 11th of September, 1886, through the brokers, Kracke & Janssen, mentioned in the complaint, they made a contract with defendants for the sale and delivery to them of ten car loads of oats, according to the sample then delivered to them, at the price of fifty-five cents per bushel ; that the ten car loads of oats, corresponding with said sample, were forwarded to defendants in Charleston and tendered to them, who thereupon accepted and

33—34

paid for three car loads, but refused to accept and pay for the other seven car loads; that on the 15th of September, 1886, plaintiffs made another contract with defendants, through said brokers, for the sale of three car loads of oats, according to the sample furnished at the price of fifty-one and a half cents per bushel, and that said three car loads were forwarded to defendants in Charleston and tendered to them, who thereupon accepted and paid for one of the car loads, but refused to accept and pay for the other two car loads; that thereafter, on the 13th of October, 1886, the said nine car loads of oats, which had previously been rejected by defendants, were again tendered to them, and the defendants thereupon agreed to accept and pay for the same according to the terms of said contracts, but that notwithstanding such agreement, the defendants wholly neglected and refused to comply with the same; that in consequence of said refusal, on the 4th of December, 1886, after due notice to defendants and after due advertisement, the said nine car loads of oats were sold at public auction, at the risk of defendants, for a sum much less than the contract price, and the plaintiffs claim, as their damages, the difference between said sum and the contract price, together with the expenses of sale and storage.

The defendants in their answer admit the contracts for the sale of the oats, the tender of the same, the acceptance of a portion of each lot, and the refusal to accept and pay for the balance, which was done because they allege that the rejected car loads did not correspond with the samples furnished, but were much inferior in grade; but they deny the allegation that they had agreed, on the 13th of October, 1886, to accept and pay for the oats previously rejected, and they deny any knowledge or information sufficient to form a belief as to the allegations in reference to the sale of the rejected oats at public auction at their risk.

While there was a conflict of testimony as to some of the facts involved, which will be more specifically stated hereinafter, there seems to have been no dispute that the oats were duly shipped by plaintiffs and reached Charleston by rail in due course of transportation, when they were examined by defendants, and a portion thereof rejected as above stated, of which due notice was given to the said brokers; nor is there any dispute that after all

negotiations for the settlement of the matter had failed, that the rejected oats, after due notice to defendants, and after advertisement in the public prints, were sold at public auction for the amount stated in the complaint, and that the difference between the amount realized at such sale, together with the costs and expenses, and the contract price are correctly stated in the complaint.

It seems that when plaintiffs learned that defendants had declined to accept a portion of the oats, they sent their confidential clerk or agent to Charleston to inquire into the matter, who reached that city on the 9th of October, 1886, but was unable to procure an interview with defendants until the 13th of that month.  As to what occurred at that interview there is a direct conflict of testimony, the testimony on the part of the plaintiffs being that defendants then agreed to accept and pay for the oats according to the terms of the contracts, and that plaintiffs' agent, relying upon that agreement, immediately left Charleston, understanding that the drafts drawn by plaintiffs on the defendants would be paid on the next day ; but the testimony on the part of the defendants is directly the reverse, they denying that any such agreement was made, or any such understanding entered into.  The plaintiffs being notified that the drafts were not paid, again sent their agent to Charleston, who, after remaining there some time engaged in a fruitless effort to settle the matter, had the oats advertised and sold as above stated.

The charge of his honor, Judge Fraser, before whom the case was tried, is very brief and seems to be set out fully in the "Case," and should, together with defendants' exceptions, be incorporated in the report of the case.  The jury found a verdict in favor of the plaintiffs for the difference in the contract price of the oats and the amount realized at the auction sale, after deducting therefrom the expenses, and judgment having been entered, defendants appeal upon the several grounds set out in the record.

The charge of the Circuit Judge is very brief, comprehensive, and to the point; and, so far as we can perceive, is free from any just exception.  There can be no doubt that, under the contracts, the making of which is admitted, the real question for the

jury was whether the goods tendered came up to the samples by which they were sold; and that was purely a question of fact for the jury. If they did, there can be no doubt that defendants were liable. We think there is as little doubt that, even if the goods did not in fact correspond with the sample, yet if the defendants accepted them, they would be liable for the contract price; for while the defendants would have had the right to reject the oats, if they did not substantially 'correspond with the samples by which they were sold, yet if they nevertheless chose to accept them, that would be a waiver of their right of rejection, and they would be bound to perform their contract to pay the stipulated price. They certainly could not take the oats after they had discovered, as they say, that they did not come up to sample, at any less price than that stipulated for in the contracts; for that would be allowing them to change one of the essential terms of the contracts, without the consent of the other contracting party. We say nothing here as to what would be the effect if the defect in the article sold was discovered after acceptance, for there is nothing in the testimony which would present the case in that aspect.

If the defendants were liable, the next inquiry would be as to the measure of damages, which the jury were instructed was the difference between the contract price and the amount for which the oats were sold at auction, less the expenses of sale and storage. This was undoubtedly the correct measure of the damages, for that unquestionably represented the amount of the loss to which plaintiffs were subjected by reason of the failure of the defendants to comply with the contracts. If the contract had been fully performed, the plaintiffs would have been entitled to receive, and would have received, the amount of money which the oats at the contract price would have brought, and, of course, their loss is the difference between that amount and the amount which they actually received, to wit, the net proceeds of the sale at auction, after deducting the expenses of storage to which they had been subjected by reason of the failure of the defendants to perform their part of the contract. This seems to be in accordance with the well settled rule of law. Benj. Sales, § 788; *Sands* v. *Taylor*, 5 Johns., 395; *Jackson*

v. *Watts*, 1 McCord, 288 ; *Millar* v. *Hilliard & Wade*, Cheves, 149 ; *Stack* v. *Railroad Company*, 10 S. C., 91. The general charge of the Circuit Judge was in conformity to these views, and all the rest of the charge was simply an adoption of the several requests to charge submitted by both parties, which in the main covered the foregoing principles.

In the exceptions complaint is made that the minds of the jury were diverted from the real issue in the case by what was said in relation to the acceptance of the oats by the defendants ; and a good deal has been said in the argument as to the difference between the acceptance and actual receipt of an article alleged to have been sold in a case like this. Inasmuch as there was no pretence, and could not have been, that there was any invalidity in either of the contracts under the statute of frauds, both of the contracts having been in writing, we are at a loss to appreciate much that has been said upon the subject. If the effort had been to take the case out of the operation of the statute of frauds by showing that there had been both an acceptance and receipt of the goods alleged to have been sold, such remarks might have been quite pertinent. Here, however, there was no dispute as to the making or the validity of the contracts which lie at the foundation of this action, and the only question was whether such contracts had been performed ; and, as we understand it, all that was said to the jury upon the subject of the acceptance by the defendants of the oats shipped to them by the plaintiffs was simply for the purpose of indicating to the jury that the acceptance of the oats, or a declaration to that effect, whereby the plaintiffs were misled to their prejudice, would be a circumstance to be considered in determining whether the defendants had not thereby admitted that the goods sold were up to the sample by which they were sold.

The exception to the measure of damages given to the jury by the Circuit Judge, in which it is contended that the defendants, even if they accepted the goods notwithstanding they were not up to sample, would only be liable for the difference between the market value of the goods so falling below the sample, at the time of the acceptance, and the net amount realized by the sale at auction, cannot be sustained, not only for

the reason as above indicated that this would be allowing one of the parties to the contract to change one of its essential terms without the consent of the other; but also for the further reason that the defendants furnished no testimony for the application of such a measure of damages, as they offered no evidence as to the market value of such defective oats, as they claimed the rejected oats to be; and, on the contrary, by their objection to the seventh interrogatory propounded to R. J. Woods, which was sustained, they expressly admitted the correctness of the measure of damages applied by the Circuit Judge.

The only remaining inquiry is whether there was any error on the part of the Circuit Judge in instructing the jury that if they found for the plaintiffs, they would be entitled to interest on the amount fixed as the measure of the damages. That there was no error in this instruction may be seen by reference to the cases of *Davies* v. *Executors of Richardson*, 1 Bay, 192; *Price* ads. *Justrobe*, Harp., 111; and *Wilson* v. *Railway Company*, 16 S. C., 592, cited by counsel for respondents; to which may be added *Blackwood & Brenan* ads. *Leman*, Harp., 219; *Wolf* v. *Sharp*, 10 Rich., 64; and *Kyle* v. *Laurens Railroad Company*, 10 *Id.*, 382. See also *Goddard* ads. *Bulow*, 1 Nott & McC., 45; *Holmes* v. *Misroon*, 1 Tr. Con. R., 21; *Ancrum* v. *Slone*, 2 Speer, 594, where the question in what cases interest is recoverable is fully discussed, and where the distinction between a finding of interest *eo nomine* and incorporating the interest in the aggregate sum of damages found, as seems to have been done in the present case, is discussed and recognized.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.