### ALEXANDER v. DuBOSE.

1. PLEADINGS—IRRELEVANT—REDUNDANT.—An allegation is irrelevant when it has no substantial relation to the controversy, and redundant when it contains the statement of evidentiary facts.
2. IBID.—FRAUD.—IN EQUITY cases, especially those charging fraud, it is not error to plead facts directly or remotely relevant to the matter sought to be established.

Before DANTZLER, J., Florence, January, 1905. Affirmed.

Action by M. Eliza Alexander against Charles W. DuBose. From order striking out certain allegations of the complaint and refusing to strike out others, both parties appeal.

*Messrs. A. B. Stuckey* and *Galletly & Ragsdale,* for plaintiff. *Messrs. Galletly & Ragsdale* cite: 50 S. C., 64; 60 S. C., 370.

*Messrs. J. P. McNeill* and *Willcox & Willcox,* for defendant, cite: Code of Proc., 181; Pom. Code Rem., sec. 551; 50 S. C., 54; 18 S. C., 473; 60 S. C., 353.

November 16, 1905.    The opinion of the Court was delivered by

MR. JUSTICE JONES.    Both sides appeal in this case from an order of Judge Dantzler made on the hearing of defendant's motion to strike out certain portions of the complaint as irrelevant or redundant.    The defendant moved to strike out those portions of the complaint, herein set out in full, which are italicized, and of those italicized portions, the Judge struck out those enclosed within brackets and refused to strike out those not so enclosed.    The defendant appeals from so much of the order as refuses to strike out, and the plaintiff appeals from so much of the order as strikes out. The complaint is as follows:

"I.  That the plaintiff is the owner in fee, and in the possession of a part, and entitled to the immediate possession of the whole, of all that tract of land situate in the county of Florence, State aforesaid, containing, by a recent survey, eight hundred and twenty-six acres, more or less, in the deeds of conveyance thereof, and is bounded by lands owned by persons now or formerly as follows: north by lands of W. M. Timmons, S. E. B. Hickson and Adeline Sims; east by lands of S. E. Carter and Margaret Conyers; south by Lynches River; and west by lands of J. J. Ward.

"II.  That there is a cloud upon the title of the plaintiff to the said premises, by reason of the fact that there appears of record in the clerk's office of said county, in book 1, on page 728, an instrument of writing, purporting to be a deed of conveyance by the plaintiff to the defendant, *for the consideration, therein expressed, of thirty-three hundred and forty-*

*seven dollars and forty-nine cents ($3,347.49), and which purports to have been signed by the plaintiff, as the grantor, and two subscribing witnesses, namely: J. E. DuBose and May DuBose.* That while the plaintiff admits that she placed her signature to the original of said instrument of writing, that her signature thereto was obtained by the defendant by fraud and deception practiced upon her by him, as hereinafter more fully stated. Yet at the time she signed the same there was no consideration whatever, expressed or stated in the instrument, nor was it witnessed by the subscribing witness, May DuBose, whose name appears as a witness thereto (*who was then, at the time of the signing of said original instrument, not at the plaintiff's home, where she signed the same, but was many miles away, as the plaintiff is informed and believes*), and that the plaintiff has never acknowledged to her that she signed or executed said instrument of writing. (*That the other subscribing witness, J. E. DuBose, was present at the plaintiff's home on or about the date of said instrument, to wit: the 16th day of September, 1897, and did witness the plaintiff's signature thereon. That if the signature of the said May.DuBose was placed upon the original instrument, of which the said record purports to show a copy, it was put there without the authority or consent of the plaintiff*), and that the deed is, therefore, null and void in law, and should be cancelled of record by the proper order of this Court.

"III. That the defendant is now (*endeavoring to defraud the plaintiff of her right and title to said property*) by claiming that he holds the absolute title thereto and denying that the plaintiff has any title or interest in law or equity to the same; whereas, not only is the said instrument purporting to be a deed illegal, by reason of the defects and deficiencies above stated, but that the signature of the plaintiff was wrongfully and fraudulently obtained thereon by the defendant by reason of the following facts and circumstances, to wit: *That the plaintiff's former husband, Dorsey G. DuBose, departed this life on or about the 10th day of June, 1891,*

*leaving the plaintiff, his widow and the mother of their child-*
*ren, eight in number, most of whom were small and of tender*
*years.* That a few years before his death, acting under the
counsel and advice of her husband, who was the manager of
all her affairs, she sold a tract of land in Darlington County,
and after paying the mortgage debt thereon, reinvested the
net proceeds in the purchase of the tract of land above de-
scribed, the title deed being taken to and in the name of
the plaintiff, who executed a mortgage thereon to secure the
balance of the purchase money thereof, to one Mrs. Mary
Byrd, about the year 1889. That the defendant is the plain-
tiff's next oldest son, *and his father, shortly before his death,*
*and being conscious that his death was near at hand, told the*
*defendant, who, by experience and superior advantages of*
*education, was, as he thought, the best qualified to take his*
*place in the management of the business affairs of the plain-*
*tiff after his death, and that he wanted him to take care of*
*his mother, the plaintiff, and take charge of the affairs at*
*home, and the defendant promised to do so.* That immedi-
ately upon the death of the plaintiff's said husband, the de-
fendant took exclusive control of the said plantation and of
all the affairs of the plaintiff, employed his younger brothers,
the plaintiff's other children, to work share crops upon said
land, year after year, hiring some for wages and agreeing
out of their shares of the proceeds of the crops to pay their
board to the plaintiff, who kept them, boarded them and
cared for them at her home on said farm, with the under-
standing that the net proceeds of the crops were to be paid
by the defendant upon the said purchase money mortgage
debt. He received all of the same and has never accounted
therefor to the plaintiff. Some time during the year 1897,
Reddin Byrd, the son of the said Mrs. Mary Byrd, and her
heir at law, as she had died, came to the plaintiff and asked
for the payment of the said mortgage debt; that she re-
ferred him to her son, the defendant, and had no further
business transaction with the said Reddin Byrd. The de-
fendant then undertook to borrow the money for the plaintiff

elsewhere by a mortgage of the premises, and shortly there-
after sent out to the plaintiff's home—*the defendant was not,
and had not been, living at home with the plaintiff for seve-
ral years*—the agent of the Scottish Loan Company, *to
inspect the land and ascertain its value,* with the view of
lending the money upon a mortgage therefor. *The said
agent stated to the plaintiff and the family that the land was
valuable, and that the said company would lend the money
thereon. The plaintiff and her entire family were pleased at
this statement, and became satisfied that the home would
be saved from foreclosure of the first named mortgage, for
the plaintiff had been informed by the defendant that the
said premises were then being advertised for sale under the
power of sale in the first named mortgage, which could only
be prevented by obtaining the money elsewhere to pay off the
same.* A few days after the agent went away, the defendant
came again to the home of the plaintiff, on the said tract of
land, and without any previous agreement or understanding
with her, brought with him the said instrument of writing
purporting to be a deed of conveyance, and requested the
plaintiff to sign for same, stating that it was necessary for
her to make the title over to him, as the said Scottish Loan
Company had refused to lend the money to her on account of
her age, she being, as he said, above the age, under their
rules, to borrow money of them. *While the defendant was
her son and she placed great confidence in him,* she hesitated
to do so, asking him what interest she would then have. The
defendant replied that the land was about to be sold under
the first mortgage, and you and the family will be turned
out of the house and home and be put in the public road, if
you do not sign this deed. *The plaintiff began to cry, and the
defendant walked away from the house, and in a few minutes
came back again and repeated the statement to her, that if
she did not sign the deed she would be put in the public road;*
and, as a further inducement to the plaintiff, told her that
he would see to it that she at least was saved a hundred acres
around the dwelling house. That the plaintiff was and had

been for some time in declining health, under the constant treatment of her physician, and was not expected to live many months, her mind and body being both in a weak condition, but trusting the defendant that he would do all that was right and proper by her and her children as to the whole premises, and believing, from defendant's statement, that she and her children would be put out penniless if she did not do so, signed the said deed as aforesaid, and acknowledged her signature to the same to her other son, J. E. DuBose, who was present when the same was signed, there being no other witness present, as above stated. (*That at the time of the signing of the said deed the plaintiff noticed that there was no consideration or purchase price made therein, the space therefor being left blank, and that she has no knowledge or information by what means the consideration thereon, as now appears of record, was ascertained or placed there*), nor has she received any consideration therefor from the defendant or any one else, and that her equity of redemption under the first mortgage stated has never been purchased from her by any one. That said tract of land was of the value of about $10,000 then, 1897, and is now worth about $16,000. *That the plaintiff is informed and believes that the defendant soon thereafter, by a mortgage executed by him, obtained the necessary money to pay off the first mortgage aforesaid, which was about the sum of seventeen hundred dollars, as the plaintiff is informed and believes, though it might be that the same should have been a small amount if the defendant had properly applied all of the net proceeds of the crop thereon prior thereto, which he had received. That the defendant's brothers, the plaintiff's other sons, to wit: Junius, Albert and Oquin, after the signing of the said instrument by the plaintiff, continued to work crops upon said lands, either for wages or under share crop contracts with the defendant, year after year, it being understood by all concerned that the net proceeds were to be applied to the indebtedness on said plantation.* That the defendant has continued to receive all of the proceeds from said farm from year to

year, being about forty bales of cotton per annum, besides tobacco and provision crops, and has never accounted therefor to the plaintiff, but, on the contrary, now refuses to account for the same, or for any other income that he has received therefrom, and claims an absolute fee simple title to said premises, denying that the plaintiff has any right or interest therein.

"IV. That the said Dorsey G. DuBose left a life insurance policy of one thousand dollars for the benefit of his wife and children, *but left a chattel mortgage on his horse and some of his cattle, to one John McSween.* That the defendant was duly appointed the general guardian of the six minor children of the plaintiff, and obtained possession, *not only of their shares of the money under the life policy,* but of the plaintiff's share as well. That she *signed a receipt for the same* but never received the money, the same being paid to the defendant. *That, by an understanding with the plaintiff, the defendant undertook to pay, and did pay off, the said chattel mortgage, using the plaintiff's share of the money for that purpose, as far as it would go, which, as plaintiff is informed and believes, was not quite sufficient to pay off the entire amount of the chattel mortgage;* but the defendant took charge of the personal property *covered thereby,* traded off the horse, but for many years left the cattle on the farm, to be used by the plaintiff, until the 30th of March, 1904, he came to the plaintiff's home and took away all of the cattle, being four head, *covered by said chattel mortgage,* and their increase, and converted the same into his own use, and should account for all of the same.

("V. *That shortly after the plaintiff made said deed, the defendant wrote to his next oldest brother, Junius, who was then in a Western State, and simply stated that he had the mortgage matter arranged; that soon afterwards Junius returned to plaintiff's home, and upon meeting the defendant there, he acknowledged to him that he had arranged the matter by borrowing the money from the Scottish Loan Company, but that he intended to give his mother one hun-*

*dred acres where the dwelling house is located, to use for her lifetime, and at her death the same to be turned over to him for his share of the plantation, but that the rest of the plantation he intended to divide up among all of her other children in equal shares. Of this the plaintiff is informed by her son, Junius. and believes the same to be true.*)

"VI. That, in addition to all the crops since his father's death, the defendant has also received the proceeds of about two hundred acres of pine timber on said tract of land, which was manufactured into lumber by the defendant, by and through his contract with some person managing a sawmill, and which he had put upon said land about the year 1900. That the said pine timber was *thick and of good quality, and* well worth at least the sum of ten dollars per acre, aggregating two thousand dollars, all of which the defendant converted to his own use and should account for the same. That the defendant also had manufactured on said plantation, since he has had control of said tract of land, sixty thousand cypress shingles of the value of about two hundred and fifty dollars, and sold therefrom also twenty-six sticks of square timber, and should account for the same.

"VII. That by and through the efforts of her son, since the defendant has had control of said premises, the plaintiff has procured to be cleared upon said land fifty-five acres of new land, and made suitable for cultivation in crops, and has also built several houses and tobacco barns, in the confidence that she and her children would receive the benefit thereof in the improvement of the plantation, which she hoped to be able to divide among them. (*That some of her younger children are now of age and need the land, which she desires to distribute among them.*)

"VIII. That the plaintiff is informed and believes that the defendant has paid off, or nearly paid off, the mortgage indebtedness aforesaid upon said tract of land, and whether the same has been paid or not, she alleges that he has received more than a sufficient income therefrom to pay off the same, and should account therefor.

"Wherefore the plaintiff prays judgment that the alleged deed by the plaintiff to the defendant be adjudged illegal, fraudulent, null and void; that the defendant be required to account for the mortgage debt and to account for the rents and profits received by him from said plantation and the live stock and personal property thereon, since the death of his father in 1891. That the income be applied to the payment of the debt, and that the plaintiff have judgment against the defendant for excess, and for such other relief as may be just and proper, and for costs."

Sec. 181 of the Code provides: "If irrelevant or redundant matter be inserted in a pleading, it may be stricken out on motion of any person aggrieved thereby."

"An allegation is irrelevant when the issue formed by its denial can have no connection with nor effect upon the cause of action." Pom. Code Rem., sec. 551; *Smith* v. *Smith,* 50 S. C., 67, 27 S. E., 545. An allegation is irrelevant when it has no substantial relation to the controversy. *Nichols* v. *Briggs,* 18 S. C., 473.

"Irrelevant matter is necessarily redundant, and though redundant matter—as statements of evidential facts—may pertain to the cause of action, yet they are sometimes called irrelevant as well as redundant." Bliss on Code Pl., sec. 214. "Matter which has no connection with the cause of action is irrelevant, while the statement of evidential facts is unnecessary. The latter may be very pertinent, they may all relate to the case, yet their statement is uncalled for and violates as well the rule against pleading evidence, and, therefore embodies redundant matter." Same author, sec. 423. This author gives as his seventh rule for the statement of a cause of action that "No fact should be stated which is not pertinent and whose statement is not necessary."

In sec. 163 of the Code, it is provided that the complaint shall contain: "A plain and concise statement of the facts constituting a cause of action, without unnecessary repetition." The facts thus required to be stated are the basic,

ultimate facts as distinguished from facts which are merely evidentiary. These general rules sustain the action of the Circuit Court in striking out.

On the other hand, this is a cause in equity, and in *Smith* v. *Smith,* 50 S. C., 54, 66, 27 S. E., 545, the Court quotes approvingly from Pom. Code Rem., 527, showing that "In the legal action the issuable facts are few, in the equitable suit the material facts upon which the relief depends or which influence and modify it are generally numerous and often exceedingly so; in the former they are simple, clearly defined and certain; in the latter they may be and frequently are complicated, involved contingent and uncertain." From this distinction there must exist somewhat more latitude in such cases in stating the facts and circumstances upon which plaintiff depends for the relief sought. The Court should be liberal in indulging a statement of facts which may be material to the relief sought, in whole or in part. This is especially true when fraud is alleged, as in this case, for both in law and in equity it is essential that the facts and circumstances which constitute fraud should be set out clearly. 9 Enc. Pl. & Pr., 684; 58 S. C., 59. In such cases it is not reversible error to refuse to strike out matters which are "directly or remotely relevant to the matter sought to be established." *Allen* v. *Cooley,* 60 S. C., 370, 38 S. E., 622.

Under these principles, we find no material reversible error in so far as he refused to strike out. On the whole, we do not see that either party is prejudiced in any material manner by the action of the Court.

The exceptions are, therefore, overruled, and the judgment of the Circuit Court is affirmed.

*The* CHIEF JUSTICE *did not participate in this opinion because of illness.*