14491

BOND BROS. CASH & DELIVERY GROCERY, INC., v.
CLAUSSEN'S BAKERIES, INC.

(191 S. E., 717)

May, 1936.

*Messrs. Herbert & Dial,* for appellant, cite:

*Mr. C. T. Graydon,* for respondent, cites: *Sound price warrants sound commodity in quality and quantity:*

June 4, 1937.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

Respondent runs a retail grocery store in Columbia. Appellant conducts a bakery, and sells its bread, cakes, and pies to retail stores. Appellant's method of doing business was similar to that of other bakeries, that is, its merchandise is intrusted to the drivers of its delivery trucks, such drivers being its agents and representatives, and each driver is required to account to appellant for all merchandise delivered to him. Appellant had customers to whom it extended credit the respondent being such a customer. The drivers for appellant have their customers and make from two to four deliveries of merchandise daily, leaving with the customer on such delivery a list of the bread, etc., put upon the bread rack, and the customer can check from this list and ascertain if the merchandise shown thereon has been actually delivered. Appellant has no way of checking against the actual deliveries, but is dependent upon the honesty of its drivers and the retail grocer or merchant protecting himself by checking deliveries as shown by the lists left with him at the time the delivery is made. Among the drivers of delivery trucks for appellant was a Mr. Bennett, who had been employed by appellant for two years or more, and made all deliveries of appellant's merchandise sold to respondents during the years 1934, and throughout 1935, until in November, when he was discharged by appellant. In addition to selling the merchandise of appellant, the respondent also sold the merchandise of two other bakeries.

Respondent, as did appellant, had every confidence in the integrity and honesty of Mr. Bennett, so much so that respondent did not check against his deliveries as shown by the list left with it, and in course of time did not require him to even leave a list. However, respondent complained to Ben-

nett about the size of its weekly bills, and complained to appellant that it was not making the money it should from the gross business being done—in fact, could barely meet its bills. Finally on October 22, 1935, a Mr. Gleaton, the route supervisor of appellant, went to one of the operators of respondent and suggested that all merchandise coming into the store should be checked to see that the quantity purchased was actually received. This suggestion and advice was followed, and in so doing it was found that within four days Bennett had "shorted" respondent $16.70 or $16.73. Whereupon the operators of respondent and Mr. Gleaton, the representative of appellant as aforesaid, confronted Bennett with the evidence they had against him, and he admitted that he had been short in his deliveries to the extent of about $50.00. Appellant offered to pay this amount to respondent, but respondent refused to accept it, and brought suit against appellant waiving claim for all amount in excess of $3,-000.00, and prayed judgment in the sum of $3,000.00.

Respondent's cause of action is stated in Paragraph 7 of its complaint, as follows: "(7) That the acts of the defendant were willful, wanton, negligent and fraudulent and were done with the intent and purpose of cheating and defrauding this plaintiff out of its just money and that by so doing the defendant breached its contract with the plaintiff to charge for goods only delivered and sold and that said breach of the contract was accompanied by fraudulent acts in that the defendant pretended to deliver to the plaintiff certain merchandise for which the plaintiff was charged and failed to deliver it; in that the defendant knowingly collected from the plaintiff amounts far in excess of that which the plaintiff was legally entitled to pay over a long period of time; in that the defendant, relying upon the trust which the plaintiff placed in the defendant, overreached and defrauded the plaintiff out of large sums of money."

Before or at the time of answering, appellant moved to strike certain allegations of the complaint, portions of which

were stricken. There are two exceptions relating to the refusal to strike out certain portions. Without discussing in detail, which is unnecessary, we overrule these exceptions. In fact, Paragraph 3 of the complaint is helpful to appellant, in that it tends to show that respondent was familiar with the method in which appellant conducted its business, and that appellant was reliant entirely to the honesty of its driver and respondent's use of due diligence to protect itself against the very happening for which complaint is made.

The answer of appellant sets forth that respondent was one of its regular customers, and over a considerable period of time had purchased and used its bread with no complaint at any time that it was not getting value received; that it had come to appellant's attention that the driver of its truck, who customarily delivered bread to respondent, had not in recent deliveries delivered the quantity of bread for which respondent was paying, and upon taking it up with the driver of the truck he offered to restore an admitted shortage of $50.00, which amount appellant continues to stand ready and willing to refund; denied that it had defrauded respondent in any respect or deprived it of any of its rights; and denied any and all allegations not specifically admitted. In addition, the answer of appellant contained this paragraph, which we set out in full: "3. Further answering the complaint and as a further defense thereto, the defendant alleges that at the times referred to in the complaint, the plaintiff purchased bread from the defendant at a fixed price therefor, and had the same or a better opportunity than the defendant to see that the bread was properly delivered, and received and used said bread making no complaint thereabout and giving the defendant no opportunity whatsoever of determining the amount of bread delivered at each delivery, but in receiving said bread and paying therefor and using same agreed to and confirmed the sale therefor; and defendant alleges that the plaintiff is now estopped by its acts and

dealings to question the amount of bread which it has received and accepted."

At the conclusion of the testimony in behalf of respondent (plaintiff below), the appellant (defendant below) moved for a nonsuit, among the grounds, that the evidence shows that there was no count made of the actual delivery of bread during the period for which it is claimed; that since respondent made no count of it or check-up on it, failed to make any complaint, and used the bread, continued to use it, and continued to order it, that it cannot now complain, and now seek to determine the amount, when they could before easily have made the count and check-up on it, and found the delivery short, if it was short. In other words, by accepting it as the amount delivered, and paying for it, and making no complaint, it waived any future complaint in reference to any shortage.

Again at the conclusion of all the testimony, appellant moved on the same ground for a directed verdict, except as to $50.00 admitted to be due, which motion was refused, and appellant's Exception 9 is based on the refusal to grant these motions.

That "a sound price warrants a sound commodity" is a legal maxim and principle of law too well established in this State to require citation of authority therefor.

This principle, by reason of the facts of the cases heretofore coming before this Court, has been applied to quality only, but it does not require even an extension of the principle to make it applicable also to quantity, and we can see no good reason why it should not as well apply to quantity. Respondent takes the position that, in fact, the case of *Greenwood Mill v. Tolbert,* 105 S. C., 273, 89 S. E., 653, Ann. Cas., 1917-C, 338, is authority for this position. Inferentially, this may be true, although a careful reading of this case will not bear out such a conclusion.

In the *Greenwood Mill-Tolbert case,* the defect was latent and hidden, and the purchaser was unable to detect the defect at the time of purchase. In the case under consideration, the "defect" was "on the surface," and readily ascertainable by the respondent. And in this case the defense of estoppel by waiver is pleaded, it being appellant's contention that any loss which respondent may have suffered was due to the negligence of respondent in failing to count the deliveries of bread when made, well knowing, as shown by the testimony, that appellant had no means of knowing—of more than suspecting, in a most general way—that the deliveries were short; and respondent having an absolute, easy, and open manner and method of ascertaining if the correct and accurate deliveries were actually being made, and having failed to use even ordinary care, it has waived any question as to the quantity of the deliveries, and is thereby estopped from maintaining an action therefor.

In the case of *Southern Coal Co. v. Rice et al.,* 122 S. C., 484, 490, 115 S. E., 815, 817, we find the following language: "* * * where the defect or inferiority which constitutes the alleged breach, whether of a condition precedent or of a warranty, is obvious or may be discovered by reasonable inspection or examination before acceptance, the purchaser's remedy is to refuse to accept the goods when delivered. By an acceptance of goods a purchaser waives the right to allege inferiority of quality which is obvious to him. *Brooke v. Milling Co.,* 78 S. C., 200, 205, 58 S. E., 806, 125 Am. St. Rep., 780; *Woods v. Cramer,* 34 S. C. [508], 516, 13 S. E., 660; *Vanderhorst v. Mc-Taggart,* 2 Bay, 498; *Mitchell v. McBee,* 1 McMul., 267, 36 Am. Dec., 264."

See, also, the case of *Griggs-Paxton Shoe Co. v. Fried-heim & Bro.,* 133 S. C., 458, 131 S. E., 620, Syllabus 4 being as follows: "Merchant, who had purchased shoes for fall delivery and had accepted and retained shoes for over a month before returning to seller, held as a matter of law to have

accepted them and waived any defect, notwithstanding that ordinarily such question is for jury."

We are of the opinion that respondent, having had every opportunity of checking the deliveries, and having failed so to do, it has waived the right and is estopped from coming into Court and undertaking to prove a shortage in such deliveries. The testimony shows such gross negligence and gross carelessness on the part of respondent that this Court, even as to fraudulent acts on the part of appellant's agent, which were made possible by the gross negligence and carelessness of respondent, does not hesitate to invoke the doctrine of estoppel by waiver.

A majority of the Court being of the opinion that appellant's Exception 9 should be sustained, it becomes unnecessary to discuss the other exceptions. However, it should be stated that the Chief Justice concurs in a reversal of the case, and direction of verdict for appellant on exceptions not herein discussed, solely on those raising the question that the evidence of shortages in the delivery of bread, other than the $50.00 admitted, was entirely too speculative and uncertain to be able to base a verdict or judgment thereon.

It is the judgment of this Court that the judgment appealed from be reversed, and the case is remanded to the Court from whence it came with instructions to enter judgment in favor of respondent against appellant in the sum of $50.00.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE concur.

MR. JUSTICE CARTER (dissenting):

This action, by Bond Brothers Cash & Delivery Grocery, Inc., plaintiff-respondent, against the defendant-appellant, Claussen's Bakeries, Inc., was commenced in the County Court for Richland County November 27, 1935. The purpose of the action was to obtain judgment against the defendant for the sum of $3,000.00 for bread alleged to have been purchased from the defendant but which, according to

plaintiff's allegations, had not been delivered to the plaintiff. In this connection we call attention to Paragraphs 3, 4, 5, 6 and 7 of the plaintiff's complaint, reading as follows:

"(3) That these plaintiffs allege, on information and belief, the defendant's method of doing business is to intrust each driver with so much merchandise on a truck for delivery, the said driver being the agent and the representative of the defendant, and that the driver is required to account for said merchandise and pay to the defendant the price thereof regardless of the amount lost by credit extended by said driver and this plaintiff alleges that said method has been in operation for a period including the time covered by the matters hereinafter alleged.

"(4) That for a period of three (3) years the plaintiff herein, *having the utmost confidence in the integrity and fair dealing of the defendant, its agents and servants,* has been purchasing bread from the defendant's truck and that the plaintiff, *although doing a large volume of business and having numbers of customers,* observed that no profit was being made in said business and that the plaintiff began to check the said bread deliveries and over a period of several weeks ascertained and determined that although the agent of the defendant claimed to deliver to the plaintiff certain items of bread and bakery products and charged the plaintiff for the same, that the same were not being delivered and that the agent or representative of the defendant was forcing the plaintiff to pay for bread and bakery products that were not received and not delivered and that during a period of less than one (1) week the amount of overcharges so required to be paid by the plaintiff came to Sixteen and 77/100 ($16.77) Dollars, said amount being the amount of overcharge for only four deliveries.

"(5) That plaintiff confronted the defendant and its agents and servants with said information and that the agents and servants of the defendant admitted that the overcharges were and had been made over a considerable period of time

and that the plaintiff then began to check his bread sales, which the plaintiff alleges had not decreased but had increased, and found that over a period of three (3) years the defendant, through its agents and servants, had by this method of operation forced the plaintiff to pay large sums of money illegally and improperly, the said amounts far exceeding the sum of Three Thousand ($3,000.00) Dollars.

"(6) That the plaintiff herein waives the claim for all amounts in excess of Three Thousand ($3,000.00) Dollars and demands judgment against the defendant for the sum of Three Thousand ($3,000.00) Dollars damages.

"(7) That the acts of the defendant were willful, wanton, negligent, and fraudulent and were done with the intent and purpose of cheating and defrauding this plaintiff out of its just money and that by so doing the defendant breached its contract with the plaintiff to charge for goods only delivered and sold and that said breach of the contract was accompanied by fraudulent acts in that the defendant pretended to deliver to the plaintiff certain merchandise for which the plaintiff was charged and failed to deliver it; in that the defendant knowingly collected from the plaintiff amounts far in excess of that which the plaintiff was legally entitled to pay over a long period of time; in that the defendant, relying upon the trust which the plaintiff placed in the defendant, overreached and defrauded the plaintiff out of large sums of money."

Pursuant to due notice, counsel for the defendant made a motion to strike certain parts of the complaint, to wit:

"First: All of Paragraph 3 of the complaint.

"Second: Portions of Paragraph 4 of the complaint, reading as follows:

"(a) 'Having the utmost confidence in the integrity and fair dealing of the defendant, its agents and servants.'

"(b) 'And that the plaintiff, although doing a large volume of business and having numbers of customers, observed that no profit was being made in said business.'

"Third: Portion of Paragraph 5 of the complaint reading as follows:

" 'That plaintiff confronted the defendant and its agents and servants with said information and that the agents and servants of the defendant admitted that the overcharges were and had been made over a considerable period of time and— ' "

His Honor, Judge Holman, who heard the motion, made the following ruling:

"The Court: In regard to the motion heard yesterday, I will get this in the record, for the time being the motion as to Paragraph three is refused, except I think it might be proper to strike out 'method of doing business' on the second line. It really doesn't make much difference, but I think that the plaintiff could show the things alleged in that paragraph.

"Mr. Herbert: That doesn't seem to me, then, to make good sense.

"The Court: In paragraph four, strike it out to read as follows: 'That for the period of three years the plaintiff herein has been purchasing bread from the defendant's truck, and that the plaintiff observed,' and from there on just as it is. My reason for that is that in paragraph seven, it is alleged that 'Relying upon the trust of the plaintiff placed in the defendant.' The first part of paragraph four reads, 'Did business for a period of four years.' That would indicate that there would have to be a certain relationship of trust there."

In answering the complaint the defendant admitted the allegations contained in Paragraphs 1 and 2 of the same, and as to Paragraphs 3 to 7 of the complaint, the defendant made this statement in its answer: "The defendant alleges that the plaintiff has heretofore made purchases of bread from the defendant and was one of the regular customers of the defendant, and that over a considerable period of time bread was delivered to the plaintiff and no complaint of any kind was made to this defendant, and defendant had

every reason to believe and did believe that the plaintiff was getting value received, and that the plaintiff was satisfied in all respects; that thereafter it was brought to the defendant's attention that the driver of defendant's truck who customarily delivered the bread apparently had not in recent deliveries delivered the quantity of bread for which plaintiff was paying, and defendant took the matter up with the driver of the truck and he offered to restore the shortage in the sum of Fifty ($50.00) Dollars, which was the total amount he had received and for which he had not delivered bread, and this defendant is informed and believes that he still stands ready to pay such amount to the plaintiff; but defendant denies that it has defrauded the plaintiff in any respect or deprived it of any of its rights, and denies all other allegations of said complaint not hereinbefore specifically admitted."

As a further explanation of its position the defendant, at the close of its answer, made this additional statement: "Further answering the complaint and as a further defense thereto, the defendant alleges that at the times referred to in the complaint, the plaintiff purchased bread from the defendant at a fixed price therefor, and had the same or a better opportunity than the defendant to see that the bread was properly delivered, and received and used said bread making no complaint thereabout and giving the defendant no opportunity whatsoever of determining the amount of bread delivered at each delivery, but in receiving said bread and paying therefor and using same agreed to and confirmed the sale therefor; and defendant alleges that the plaintiff is now estopped by its acts and dealings to question the amount of bread which it has received and accepted."

At the close of the plaintiff's testimony the defendant made a motion for a nonsuit, which motion his Honor refused, and at the proper time a motion was made by the defendant for direction of a verdict. This motion was also refused, and the case submitted to the jury.

From the verdict and judgment thereon for the plaintiff, the defendant duly appealed to this Court, interposing a number of exceptions, but according to appellant's statement, contained in its brief filed with this Court, the following constitute the questions raised by the appeal:

"1. Should certain paragraphs of the complaint relating to defendant's methods of doing business and alleging that plaintiff relied on defendant have been stricken out?

"2. In a suit for damages for failure to deliver the quantity of bread paid for, was evidence as to the sales of bread and other merchandise, both before and after the alleged failure, properly admitted?

"3. Did the trial Judge err in not granting a nonsuit or directing a verdict for defendant on the ground that since the bread admittedly was not counted and checked when delivered that there was no evidence showing a shortage?

"4. When the plaintiff received deliveries of bread and being the amount with which it was charged and which it could easily have counted and it paid for and used same, can it later come in and claim that the deliveries were short or has it waived its right?

"5. Is there any warranty as to number where packages may be readily counted, and should his Honor have granted a nonsuit or directed a verdict on the ground that there is no such warranty?

"6. May a purchaser presume that the number of packages purchased have been delivered?"

We have quoted at length from the record so as to make clear the position of the parties concerned in the case.

Appellant takes the position that the first question asked should be answered in the affirmative and, in effect, contends that the matters referred to in this question were not proper matters to be alleged and proven in the case, and the Court, on trial of the case, should not have permitted the introduction of testimony tending to establish the truth of the same; it being, in effect, the position of appellant that allegations in

the complaint as to appellant's method of carrying on its said business with its drivers could in no way have a proper bearing on the judgment asked for, for which the action was instituted. Further, the appellant contends, in effect, that the plaintiff-respondent's confidence in appellant's agents could in no way have any bearing on the case involved. Also, appellant contends that the respondent's failure to make a profit on his business could not, in reality, affect the outcome of the case. For the several reasons mentioned the appellant contends that the allegations referred to in the first qustion should have been stricken out, and in support of its position appellant cites several cases and quotes the following from the case of *Alexander v. DuBose,* 73 S. C., 21, 52 S. E., 786, 788: " 'An allegation is irrelevant when the issue formed by its denial can have no connection with, nor effect upon the cause of action.' Pom. Code Rem., § 551; *Smith v Smith,* 50 S. C. [54], 67, 27 S. E., 545. * * * In Section 163 of the Code of Civil Procedure of 1902 [now Section 456 of the Code of 1932], it is provided that the complaint shall contain 'a plain and consise statement of the facts constituting a cause of action, without unnecessary repetition.' The facts thus required to be stated are the basic, ultimate facts, as distinguished from facts which are merely evidentiary."

An examination of the record of the case convinces us that it was proper to offer testimony to show the method the parties used in carrying on their business in order to determine the liability, and allegations in anticipation of such testimony were proper. In this connection we call attention to the testimony of one of the defendant's witnesses, Mr. Gleaton, who served as salesman for awhile for the defendant company and at the time in question was acting as supervisor. In explaining the method of the way the company carried on the business, among other things stated by this witness, among other things stated by this witness, he testified: "A. The system we have done there, we put the bread

on the bread racks, and it's issued to the salesman in the morning. Maybe Bennett had $100.00 worth issued to him. He orders it the day before. We take that same order, and the shipping clerk fills that order, just as it is, and puts it off on the rack. We have a spot in the bakery for each salesman, so the salesman comes on in the morning, and we instruct them to check the bread before they move anything, and if they find anything wrong, all they have to do is to call in the shipping clerk, and he will fix it, if it is short, or over. We find that our shipping clerks make mistakes, anybody does, and if they take the bread or cake on the platform to check it, we have a rule that you can't get credit, unless it's before you begin to load the truck. They take this load out, say $100.00 worth, and he could run Bond Brothers by the week and sell the rest of the customers for cash, and if he got $10.00 a day from Bond Brothers, all he would have to do would be to add it to the account and put that $10.00 in his pocket, and we wouldn't have a check on it. All we have on the right side is 'Bond Brothers $20.00,' or whatever it is. He was always honest with us, though, and we never had had any trouble with him."

In our opinion, appellant's exception upon which Question No. 1 is based should be overruled.

The following is appellant's second question: "No. 2. In a suit for damages for failure to deliver the quantity of bread paid for, was evidence as to the sales of bread and other merchandise, both before and after the alleged failure, properly admitted?"

Under the facts of this case, it is our opinion that the question must be answered in the affirmative, for, as we view the case, in no other way can the truth be arrived at. Mr. Bennett, agent of the defendant, admitted taking from the plaintiff, from time to time, when he was delivering bread at the plaintiff's store for the plaintiff, a part of the bread sued for. When Mr. Bennett made this statement and admission, he was allowed to estimate, and he did estimate,

how much bread he kept out and what it would amount to in dollars. Unless the plaintiff, in effect, be forced to accept absolutely this estimate of Mr. Bennett, the plaintiff must be permitted to make an inquiry into the period of time that transpired while the bread was being kept out and not given to the plaintiff and what period of time elapsed so as to enable the plaintiff to ascertain what it amounted to. For this purpose the books were examined and an expert accountant procured. The accountant was unable to state absolutely what amount of bread was kept out each day, but by making a general calculation he was able to give to the jury facts that aided the jury in determining to some extent the loss the plaintiff had suffered, and for this purpose it was proper for the Court to receive testimony. The fact must be kept in mind that the agent, Mr. Bennett, did not admit taking the bread until after he was caught. A trap was laid for him, and it was after he was caught that he made these admissions. As we view the situation, the plaintiff was not confined to facts which defendant's agent admitted, but under the circumstances of the case the trial Judge properly allowed in evidence such testimony as tended to establish the truth even though Mr. Bennett had not admitted it. As contended by the respondent, it was proper to go into the sales made after this employee and agent was caught in his wrongful acts, as well as those before he was caught. In this way a comparison could be made of the sale of bread made before the wrongful taking with the sale of bread made after the wrongful taking. While such method did not, perhaps, furnish an absolute accurate method of ascertaining the value of the bread taken from the plaintiff, it did furnish to the jury some valuable aid in acquiring the truth. It must be borne in mind that the agent. Bennett, is not being tried in the criminal Court for the wrongful act he is alleged to have admitted, but the company that Bennett represented at the time in question is sued on the civil side of the Court for money plaintiff alleges that the plaintiff lost on account of the

wrongful acts set forth in the complaint against the defendant, the defendant being responsible to the plaintiff for the wrongful acts committed by the agent, Bennett. It is our opinion that the plaintiff was entitled to make known to the Court and jury, by means of testimony, all facts bearing on the question that were reasonably calculated to be helpful to the jury in finding the truth on the question involved, and helpful to the jury in reaching an honest and correct verdict.

The remaining questions presented by the appellant, 3, 4, 5 and 6, which we have quoted above, will be considered jointly.

It is true, as contended by appellant, that the bread was not counted and checked at the time it was delivered; but when we take into consideration the testimony as a whole, and especially the testimony of the accountant, to which we referred above, we are unable to hold that there was no evidence showing a shortage. In this connection we desire further to call attention to the fact that the testimony of the accountant has to be read in its entirety to be fully understood, but because of the length of the same, covering a number of pages, it will not be quoted. We are unable to agree with the appellant in its contention that the respondent waived its rights to claim more than Bennett admitted by failing to make a count at the time of the deliveries. In this connection we call attention to the holding of the Court in the case of *Greenwood Cotton Mill v. Tolbert,* 105 S. C., 273, 89 S. E., 653, Ann. Cas., 1917-C, 338, and the case of *Rose v. Beatie,* 2 Nott & McC., 538. The facts in this case cannot be read without reaching the conclusion that a fraud was practiced upon the plaintiff, that the plaintiff paid a sound price for the bread purchased, and the plaintiff was clearly entitled to receive the bread it purchased or compensation therefor. The plaintiff, the appellant argues, should have made the count at the time of delivery to see that the full amount of bread was delivered, but, as testified by one of the plaintiff's agents in charge of receiving the bread, he had full confidence in

Mr. Bennett and trusted him. When all of the facts are considered in connection with how the fraud was practiced upon the plaintiff, the conclusion will be reached that the trial Judge committed no error in submitting the case to the jury and allow the jury to consider this testimony in arriving at its conclusion and determine whether or not, under all the facts presented, the defendant should be required to answer to the plaintiff in damages for the wrong practiced by its agent upon the plaintiff. Again we call attention to the fact that a fraud was practiced upon the plaintiff; that the bread was kept out by the defendant's said agent in a fraudulent way. Under the facts in the case at bar we do not think the authorities cited by appellant controlling. It is clear, as stated above, that a fraud was practiced upon the plaintiff, and under all the circumstances testified to, the plaintiff is entitled to recover for the amount of bread it paid for and did not get. There was ample testimony to show the plaintiff's loss amounted to as much, or more, than the amount of the verdict rendered for the plaintiff. Considering all the questions submitted by the appellant in connection with the entire record, we think the exceptions should be overruled and the judgment of the lower Court affirmed.