14019

GAILLARD v. GAILLARD *ET AL.*

(179 S. E., 41)

*Messrs. A. C. Hinds* and *H. L. Smith*, for appellant,

*Messrs. Jas. M. Wingate* and *Samuel Want,* for respondents,

March 19, 1935.

The opinion of the Court was delivered by Mr. M. M. MANN, ACTING ASSOCIATE JUSTICE.

Being unable to concur in the opinion by Mr. Associate Justice Bonham, I beg to submit the following reasons for my difference of views:

The facts in the case are fully stated by Justice Bonham, and further recitation thereof is unnecessary.

The meat of the whole case is admirably summarized in the last paragraph of the decree of Judge Shipp, which is as follows: "From a reading of the whole will, the inference is inescapable that the testator intended to treat the proceeds of his insurance policies as a fund entirely apart from the remainder of his estate and that, when he referred in paragraph 1 to 'cash and securities' standing in his name at the time of his death, he had in mind cash and securities other than the proceeds of the insurance. To construe paragraph 1 of the will as referring to the policy payable to the estate, as the plaintiff contends should be done, would destroy the whole scheme of the will, for under that construction the only insurance money to which paragraphs 2, 3, 4 and 5 of the will could refer would be the proceeds of the policies payable to the mother, and no part of which could have been paid over to the plaintiff except for the voluntary act of the mother in surrendering the funds to comply with the testator's wishes. And such a construction would have the effect of making paragraph 5 of the will legally meaningless, since there would be no 'balance of said insurance money' upon which it could operate."

That Judge Shipp has reduced these somewhat ambiguous relevant portions of the will to a clear and logical interpretation seems entirely convincing. When it is remembered that the whole controversy centers around the disposition of the insurance money, it becomes necessary only to understand fully what the testator meant by the language in paragraphs 2, 3, 4 and 5 of the will.

These paragraphs treat *entirely* with the insurance money. It is treated as a unit. Paragraph 2 merely apprises the executors of the number of policies on the life of the testator and the respective beneficiaries. This is nothing more than an identification or inventory of the policies. The request to the mother to pay over the amounts realized on the policies payable to her so that such amounts could be treated in the same manner as the funds realized on the policy payable to the estate was but to ask her to do the thing absolutely necessary to get this fund into his estate, along with the other insurance fund already there.

It is hard to conceive of any reason why funds derived from the policies payable to the mother should be treated or disposed of in a way different from that derived from the policy payable to the estate. No reason appears in the will, and the Court should not attempt to create one. And when, in the immediately succeeding paragraphs, the testator, after having used language which it seems must clearly mean that he intended *all* the insurance money to be treated as a unit, makes a distribution of the proceeds from "said insurance money" which seems extremely liberal to those who could *not* have benefited therefrom but for the mother's generous concession to her son's request, and which leaves the mother with but a moderate portion out of the *entire amount,* it would be laying a harsh hand by the law upon the head of the trusting parent to say that, whereas she had surrendered *all,* she must fall victim to a stretch of the Court's imagination and be satisfied with a pittance. For let it be kept in mind that under the policies she had an estate of $17,622.41

in her own legal right. Would a considerate son require or request her to surrender this comfortable sum in exchange for a mere $2,622.41?

In his able opinion the learned Associate Justice, who would sustain the claim of the appellant, says that Judge Shipp "loses sight of the fact that the will makes generous provision for the mother in lieu of the insurance fund which she surrendered." This observation can be based only on the assumption that the lands and other properties mentioned in paragraph 8 of the will and devised to the mother are equal in value and *returns* to the money derived from the insurance policies payable to her. The record is entirely silent on these values. Somehow, this impresses us as significant. For, had these devises to the mother been of such yielding value as a corresponding value in cash, may we not reasonably assume that such information would have been revealed at the trial? And, on the other hand, the Court is entirely safe at this time in assuming that, in the absence of any revealed peculiar value in these properties, the definite depression in values of, and returns from, lands and securities of this kind has left its mark on the properties in question.

Hence, it would appear that the wife who gets a comfortable amount in cash in lieu of lands and stocks may reasonably be classed as a "child of fortune" rather than a victim of discrimination.

This opinion being concurred in by a majority of the Justices, it becomes the judgment of the Court, which is that the judgment of the Circuit Court is affirmed.

Messrs. Justices Stabler and Carter concur.

Mr. Justice Bonham and Mr. Acting Associate Justice Philip H. Stoll dissent.

Mr. Justice Bonham (dissenting):

This controversy arises over the construction of certain provisions of the will of Dr. W. M. Gaillard, late of Georgetown County, of which will J. Palmer Gaillard and Elizabeth A. Gaillard, brother and sister of the testator, were

appointed executor and executrix. Annie D. Gaillard, the appellant, is the widow af the testator, and Margaret C. Gaillard is his mother.

Paragraph 1 of the will directs the executor to pay the expenses of last illness and funeral expenses as soon as practicable after the death of testator, and they "shall pay all other debts, including taxes on my estate, as soon after my death as may be possible, and for that purpose I hereby direct my executors to use, first, any cash money available from my estate, but if there is not a sufficient amount of cash for the purposes aforesaid, then I direct my executors to convert a sufficient amount of securities into cash for that purpose so as to clear up all my debts and liabilities. Whatever cash and securities are left standing in my own name (not including the properties and securities of The Excelsior Trust Company) shall be equally divided between my wife, Annie D. Gaillard, and my sister, Elizabeth Allen Gaillard."

The testator states in the second paragraph of his will that he owns and holds eleven life insurance policies, all of which are payable to his mother except two. In this it appears that he was mistaken; ten of the policies were payable to his mother and one to his estate. In the second paragraph he states: "I have the right of change of beneficiary in all of these policies, but instead of making formal application to the insurance companies, *which would take some time,* I desire to request my mother, Margaret C. Gaillard, *to collect the amounts due on all policies payable to her and then pay the same over to the executors of my estate to be disposed of as herein directed."*

The third paragraph of the will directs that "From out of the *said insurance money* I direct my executors to pay to my wife, Annie D. Gaillard, the sum of Ten Thousand ($10,000.00) Dollars."

So much of paragraph 4 as is necessary to be noticed here is as follows: "From out of the *said insurance money* I direct my executors to pay over to Elizabeth A. Gaillard and

J. Palmer Gaillard, Trustees for Peter Gaillard (my nephew) the sum of $5,000.00 to be used as an educational fund, etc."

Paragraph 5 is as follows: "All the balance of the *said insurance money* shall go to my mother, Margaret C. Gaillard." (All italics added.)

The other provisions of the will will be considered later.

Mrs. Margaret C. Gaillard complied with the request of her son, the testator, collected the sums due on the policies payable to her, and turned the money over to the executors. They collected the amount due on the policy payable to the estate. The sums amounted in the aggregate to $22,728.52. The amount collected on the testator's policies payable to his mother was $17,622.41, and that collected on the policy payable to the estate was $5,106.11. From the total sum $10,000.00 was paid to Annie D. Gaillard, wife of the testator; $5,000.00 to Elizabeth A. and J. Palmer Gaillard, trustees for Peter Gaillard, and the remainder, $7,728.52, was paid by the executors to Mrs. Margaret C. Gaillard, mother of the testator.

The appellant brought this action alleging it to have been an error on the part of the executors to pay the whole of the proceeds of the policy payable to the estate, to wit, $5,106-.11, to Mrs. Margaret C. Gaillard under the provisions of paragraph 5 of the will, that appellant, under the provisions of paragraph 1 of the will, was entitled to one-half thereof. For answer the respondents aver, that they were advised and believe that under a proper construction of the will of the testator it was the intention of the testator that the plaintiff should receive, out of the proceeds of the insurance policies on the testator's life, the sum of $10,000.00, that $5,000.00 should be paid therefrom to the trustees for Peter Gaillard, and the remainder to Mrs. Margaret C. Gaillard.

The sharp issue made by the pleadings is this: Should the proceeds of the policy payable to the testator's estate have been added to those arising from the policies payable to Mrs.

Margaret C. Gaillard, and the total paid out as directed by paragraphs 2, 3, 4 and 5 of the will, or should the proceeds of the policy payable to the estate have been applied by the executors in accordance with the provisions of paragraph 1 of the will?

The case was submitted to Judge Shipp on the pleadings, exhibits and statement of additional facts. In his decree, his Honor sustained the construction of the will contended for by respondents as being in accordance with the intention of the testator, and he further held that plaintiff was estopped to maintain this action by the terms of the release which she had signed.

This appeal followed, founded upon various exceptions, not all of which need be specifically considered.

The learned and benevolent Judge who heard this case was moved, it would seem, by the moral issue which respondent's counsel urged and urges in this appeal. His Honor said: "While the mother was under no legal obligation to pay over to the executors the proceeds of the life insurance made payable to her, she did provide the funds with which the testator's legacy to his widow was paid, and she further provided out of the insurance funds made payable to her the sum of $5,000.00 in order to carry out the testator's desire to provide an educational fund."

One must admire the fine spirit in which the mother responded to the wish of her dead son. But the above-cited utterance of the decree loses sight of the fact that the premiums on these policies were not paid by the mother, but by the son, and loses sight of the fact that the will makes generous provision for the mother in lieu of the insurance fund which she surrendered.

It does not need the citation of authority in support of the postulate that "the cardinal rule to be observed in the construction of a will is to ascertain, if possible, what was the real intention of the testator." Nor does it need the citation of authority to maintain the equally valuable and general

rule that "the will is to be read *as a whole,* and from its terms is to be ascertained what was in the mind of the testator when he executed it."

Let us, then, analyze this will and parse its language.

The testator executed his will the .. day of May, 1930, and died the 27th day of May, 1930. One expression in the second paragraph of the will is illuminative of "what was in the mind of the testator," then almost entering upon the way to "that bourne from which no traveler e'er returns." He said: "At the present time I own and hold eleven (11) life insurance policies all of which are payable to my mother, with the exception of two policies. *I have the right of change of beneficiary in all of these policies, but instead of making formal application to the insurance companies for change of beneficiaries, WHICH WOULD REQUIRE SOME TIME,* I desire to request my mother," etc. (Italics added.)

It is plain that he had intended to change the beneficiary in some of these policies, but "procrastination is the thief of time," and he had neglected it until too late. On his deathbed he realized that he had made no provision for his wife by way of insurance on his life; all his policies save one were for the benefit of his mother. It may be that he had taken out these policies for his mother's benefit before he married. He, in this emergency, appeals to his mother's love and generosity to relinquish her claim to the insurance fund, and it is plain that he undertakes to compensate her by other provisions in his will.

That he intended this fund derived from the policies payable to his mother to be added to the fund derived from the policy made payable to the estate and from this general fund be paid the legacy to his wife of $10,000.00 and that of $5,-000.00 to the trustees for the benefit of his nephew, with the remainder to his mother, rests solely upon assumption. No words are nor can they be interpolated into the will to convey that meaning. It is not allowable to add to testator's words. The intention of the testator must be ascertained, "not by

resorting to conjecture as to what was likely to be such intention, but by an attentive and careful consideration of the words of the will in each and every part of it, guided by such rules of law as experience has shown to be useful in seeking such intention." *Snider v. Robertson,* 9 S. C., 213, 229.

The testator has earmarked the insurance money from which the legacy to his wife, that to the trustees for Peter, and the remainder of the fund to his mother, was to come. Immediately after the request to his mother that she collect the policies payable to her and turn the proceeds over to the executors, he said:

"Par. 3. *From out of said insurance money,* I direct my executors to pay my wife $10,000.00."

"Par. 4. *From out of said insurance money,* I direct my executors to pay Elizabeth A. and J. Palmer Gaillard, Trustees for Peter Gaillard, the sum of $5,000.00.  *  *  *"

In paragraph 5 he says: "All the balance *of the said insurance money shall go to my mother."*

The balance of what insurance money shall go to the mother? The balance of that which she had collected from policies payable to her. No other money had been mentioned. Not a word was said in connection with this matter about the proceeds of the policy which was payable to the estate. The testator knew that the proceeds of that policy, when collected by the executors, became cash in their hands applicable first to the expenses and debts of the estate.

In paragraph 1 of the will, the testator directed the executors to pay the expenses of last illness, funeral expenses, taxes on his estate, and all other debts; if necessary, to convert securities into cash for that purpose "so as to clear up my debts and liabilities." With meticulous care he provided for the clearing up of all his "debts and liabilities." It is inconceivable that, if the testator had intended to divert this sum from its lawful purpose, as indicated in paragraph 1 of his will, he did not say so. He knew that these funds

were assets of the estate primarily responsible for the payment of expenses of administration, funeral expenses, and those of last illness, debts, taxes, and all liabilities of the estate. These funds could only be used for such purposes, and by express direction of the testator whatever remained therefrom (not including the property and securities of the Excelsior Trust Company) shall be equally divided between the wife and the sister of the testator. Here is express and direct disposition of this fund, which is 'beyond all doubt an asset as cash in the hands of the executors; whereas its diversion to the insurance fund derived from the other policies rests solely upon the conjectural intention of the testator, for which not a line or word of written direction is found in the will.

The circuit Judge says in his decree that the construction for which the appellant contends "would have the effect of making paragraph 5 of the will legally meaningless since there would be no 'balance of said insurance money' upon which it could legally operate."

In this he is clearly in error. There was, of the funds collected from the policies payable to Mrs. Margaret C. Gaillard, the sum of $17,622.41. To the widow was paid $10,000.00; to the trustees for Peter Gaillard was paid $5,000.00. There was left the sum of $2,622.41, which was paid Mrs. Margaret C. Gaillard under the provisions of paragraph 5 of the will.

To the widow went $10,000.00 of the insurance money, $4,000.00 in a mortgage on the schoolhouse, $1,000.00 in household effects, and $500.00 in an automobile.

In addition to the $2,622.41 from the insurance fund, the mother received half of the testator's interest in the Excelsior Trust Company, *and the property owned by it* (exclusive of the schoolhouse mortgage), and an interest in Walworth Plantation.

It is to be regretted that the record does not show the value of these properties. It is a legitimate and fair inference

that they had a substantial value, which would largely compensate the mother for acceding to the wishes of her son in the matter of the insurance and would provide for her comfort and maintenance.

In addition to this, the executors have paid her $5,106.11, proceeds of the policy payable to the estate, which added to the balance from the money derived from the insurance policies payable to her, viz., $2,622.41, makes a total of $7,728.52 paid to Mrs. Margaret C. Gaillard in cash.

The appellant is asking to recover only her half of the $5,106.11 arising from the proceeds of the policy payable to the estate, viz., $2,553.05. This still leaves the mother in possession of $5,225.06 cash, in addition to the real estate and the stock and properties of the Excelsior Trust Company. The widow does not receive a foot of real estate, and has agreed to relinquish her rights of dower in the lands owned by her husband.

The circuit decree holds that appellant has estopped herself to maintain this claim by the release which she signed.

Note that the release states that it is given in consideration of the sum of $10,000.00 paid her by Margaret C. Gaillard, through J. Palmer Gaillard, executor, and Elizabeth A. Gaillard, executrix, of the estate of W. M. Gaillard; the sum of $10,000.00 *being a portion of the life insurance money collected by Margaret C. Gaillard on the life insurance policies held by W. M. Gaillard and payable to Margaret C. Gaillard, etc.*

It is fair to assume that Mrs. Margaret C. Gaillard and the executor and executrix were fully cognizant of the contents of the release, and accepted it without comment or demurrer, in the face of the fact that it asserted in plain words, which they did not deny, that the money paid the wife of the testator came from the insurance money paid Mrs. Margaret C. Gaillard from the policies payable to her, and no claim is made by them that the money arising from

the policy payable to the estate is contained therein. Certainly there is here no waiver nor estoppel by appellant.

The release proceeds in this wise: "Also in consideration of the said sum of money, I hereby release and exonerate the Executor and Executrix of the estate of W. M. Gaillard from all further liability or accountability to myself and my heirs, executors and administrators for and on account of any interest I now have, or may hereafter accrue to me in the estate of W. M. Gaillard, *excepting* my one-half (½) interest in the *cash and securities* remaining in the hands of the Executor and Executrix after the debts of the estate are fully paid, and *excepting* my one-half interest in the trust fund provided for in the will of W. M. Gaillard for the education of Peter Gaillard."

So far from there being evidence of waiver and estoppel, there is an explicit exception as to the very item upon which this action is founded, to wit, the *cash* and securities remaining in the hands of the executors after the debts are paid. The executors alone could collect the amount of the insurance covered by the policy made payable to the estate. They did collect it. Immediately it became cash in their hands, and there is not a title of power given them to disburse it save that given in paragraph 1.

As was said in *Griffith v. Newell,* 69 S. C., 300, 48 S. E., 259, and more than once affirmed by this Court: "That a party to such a contract paid for what he received thereunder while demanding his rights, does not justify an inference that he waived his rights.  *  *  *  'Waiver means acquiescence, and where a party insists on carrying out the contract all the time, it is not waiver'."

Estoppel is akin to waiver. When the appellant, in the release, expressly reserved her rights under the will, there could be no estoppel. To estop one there must be a voluntary relinquishment of a known legal right.

The appellant had no hand in the administration of this estate. She was not made an executor of the will. This of-

fice was devolved on the brother and sister of the testator. She was excluded from any interest in Walworth Plantation. The executor and executrix were given power to dispose of the residuum of the estate "as they think best."

Certainly she has received nothing from her husband's estate not expressly given her by his will. She is well within her rights when she brings this action.

The decree of the circuit Judge should be reversed, and the case remanded, with direction to enter judgment for the plaintiff for the relief demanded in the complaint.

MR. ACTING ASSOCIATE JUSTICE PHILLIP H. STOLL concurs.