HENRY A. GOULD & another *vs.* ABE STEIN & another.

Suffolk. March 22, 1889. — September 4, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Sale by Sample — Warranty of Quality.*

A sale was of a certain number of "bales Ceara scrap rubber, as per samples, . . . of second quality." *Held,* that there was a twofold warranty, of conformity to sample and of quality, which was broken by a failure to deliver rubber of second quality, irrespective of whether it was equal to the samples.

CONTRACT to recover for a breach of warranty of quality of one hundred and two bales of Ceara rubber, sold by the defend-

ants to the plaintiffs. Trial in the Superior Court, without a jury, before *Pitman*, J., who allowed a bill of exceptions, which so far as material is as follows. .

There was evidence tending to show the following facts. The defendants, who did business under the name of Abe Stein and Company, were importers of rubber in New York; and the plaintiffs, who did business under the name of Henry A. Gould and Company, were jobbers and dealers in rubber in Boston. The defendants had before the sale employed one Greene, a broker, to sell rubber for them, including that in question, and had given him among others a sample of second quality Ceara scrap rubber. This sample Greene brought to the plaintiffs' office and gave to them, representing it to be a sample of second quality Ceara rubber then in the defendants' store. Afterwards the plaintiff Gould went to the defendants' store, where a large part of the rubber in question was stored, at the broker's request, to settle terms of payment, and while there made some examination of several bales of rubber, and had an opportunity to examine as many as he wished. He then said to one of the defendants, that, if the rubber examined was a fair sample of the goods, he would buy the rubber in question. That portion of the rubber bought which was stored elsewhere than in the defendants' store was substantially of the same quality. After this examination, the parties went into the defendants' office and had some discussion as to prices and terms. The broker then sat down and wrote bought and sold notes, reading them over to the parties line by line as he wrote them, and, after signing them, gave them to the respective parties. The bought note, to which the sold note corresponded, was signed by the broker, and recited: "Sold to Messrs. Henry A. Gould & Co. on account of Messrs. Abe Stein & Co. one hundred and forty-eight (148) bales Ceara scrap rubber, as per samples, viz. forty-six (46) bales of first quality, marked A, at forty-seven (47) cents per pound and one hundred and two (102) bales of second quality at forty-two and one half (42½) cents per pound. . . . All payable by four (4) months' note to buyers' own order, with interest at rate of six (6) per cent per annum from delivery." The rubber was then duly forwarded by the defendants, and delivered to the plaintiffs. Eight

of the bales received by the plaintiffs, and still in their possession, were of good second quality, and the remaining bales were of a third quality, and very inferior. The second quality of rubber is well known to the market as distinct from a third or inferior quality. It appeared that there was no exact standard by which the grade of rubber could be fixed, but that it was a matter of judgment. The plaintiffs did not see before the sale any bales of third quality rubber, and did not discover that the rubber delivered was not of second quality until some time after the sale.

The plaintiffs contended that the purchase of this rubber was made on the faith of the samples furnished by Greene, and also that the broker's notes contained a warranty that the goods were of a second quality. The defendants contended that the purchase was made upon the examination of the rubber made by Gould at the defendants' store, without reference to any other samples; that the same rubber that the plaintiffs bought had been delivered to them, and that the contract had been fully complied with; and asked the judge to rule, as matter of law:

" 1. That the examination of the rubber by the plaintiff Gould was such, and his opportunity for examination so complete, that the plaintiffs cannot maintain this action for breach of warranty.

" 2. That if, at the time of making the contract, the plaintiff Gould had in mind a sample previously shown to him by Greene, and the defendants had in mind the several bales of rubber examined by Gould at the store, and so the parties were not agreed as to the samples named in the contract, there was no contract of warranty on which this action can be maintained.

" 3. That the court must determine whether the samples referred to in the broker's note were those exhibited by Greene to Gould, or the samples examined by Gould at the defendants' store.

" 4. That if there be any warranty in the broker's note, and the court finds as a fact that the samples referred to in the contract were the bales examined by Gould at the defendants' store, then the warranty is only that the remainder of the one hundred and two bales were of as good quality as those examined by Gould."

The judge refused so to rule, but ruled and found as follows:

" 1. The description in the broker's note of the one hundred and two bales of Ceara rubber as 'second quality' amounts to a warranty.

" 2. Such an article is well known in the market as distinct from a third or inferior grade.

" 3. I find that the defendants failed to deliver the article described and warranted.

" 4. The examination made by the plaintiffs did not relieve defendants from the obligation of their warranty.

" 5. I find, therefore, that there has been a breach of warranty, and that the defendants are liable to damages."

The judge did not find whether the sample referred to in the broker's note was the sample exhibited by Greene to Gould, or the samples examined by Gould at the defendants' store, or whether the rubber delivered to the plaintiffs differed from these samples; ruling that the broker's note contained an absolute warranty of second quality rubber, and that it was not necessary to determine the question as to which sample was referred to. At the request of the plaintiffs' counsel, the judge made the further finding, that, upon the whole evidence, there was nothing established inconsistent with the intent to warrant the rubber to be of second quality.

The judge found for the plaintiffs; and the defendants alleged exceptions.

The case was argued at the bar in March, 1889, and afterwards was submitted on the briefs to all the judges.

*J. H. Dougherty* (of New York) & *G. A. King*, for the defendants.

*J. B. Warner* & *H. E. Warner*, for the plaintiffs.

C. ALLEN, J. The determination of this case depends upon the construction to be given to the bought and sold notes, which were similar in their terms. It does not admit of doubt that these notes were intended to express the terms of the sale. They were carefully prepared, and were read to the parties line by line as they were written. Of course all the existing circumstances may be looked at, but the contract of the parties is to be found in what was thus written, when read in the light of those circumstances.

The goods respecting which the controversy has arisen were a certain lot of rubber which the defendants had on hand, and which could be identified. The transaction was a present sale, and not an agreement to deliver rubber in the future. The defendants now contend that the contract was executory, and that if there was any warranty there was none which survived the acceptance of the goods by the plaintiffs; but the argument that it was not an executed present sale finds no support in the bill of exceptions, and no such point was taken at the trial, and there is no occasion to consider the further question whether, in case of an executory agreement to sell, a warranty will survive the acceptance of the goods.

The bought note which the plaintiffs put in evidence was of " 148 bales Ceara scrap rubber, as per samples, viz. 46 bales of first quality, marked A, . . . and 102 bales of second quality." The controversy relates only to the one hundred and two bales. It appeared that there was no exact standard by which the grade of rubber could be fixed, but that it was a matter of judgment. The court also found that Ceara rubber of second quality is well known in the market, as distinct from a third or inferior grade; and there was evidence which well warranted this finding. The parties in their contract recognized the existence of different grades or qualities, though all of the rubber properly classified as of first quality or of second quality might not be of an exactly uniform standard or grade.

The plaintiffs at the trial claimed damages merely on the ground that the one hundred and two bales were not of second quality, and made no claim of inferiority to the samples shown, as a distinct ground, but waived all claim founded on the exhibition of samples; and the court found damages for the plaintiffs solely on the ground that the defendants failed to deliver rubber of the second quality, ruling that the broker's note contained an absolute warranty of second quality rubber. If this ruling was right, it disposes of the defendant's second and third requests for instructions.

The general rule is familiar and admitted, that a sale of goods by a particular description imports a warranty that the goods are of that description. *Henshaw* v. *Robins*, 9 Met. 83. *Harrington* v. *Smith*, 138 Mass. 92. *White* v. *Miller*, 71 N. Y. 118.

*Osgood* v. *Lewis*, 2 Har. & Gill, 495. *Randall* v. *Newson*, 2 Q. B. D. 102. *Jones* v. *Just*, L. R. 3 Q. B. 197. *Josling* v. *Kingsford*, 13 C. B. (N. S.) 447. *Bowes* v. *Shand*, 2 App. Cas. 455. And where goods are described on a sale as of a certain quality, which is well known in the market as indicating goods of a distinct though not absolutely uniform grade or standard, the description imports a warranty that the goods are of that grade or standard. In such cases, the words denoting the grade or quality of the goods are not to be treated as merely words of general commendation, but they are held to be words having a specific commercial signification. Thus, in *Hastings* v. *Lovering*, 2 Pick. 214, the words in a sale note, " Sold Mr. E. T. Hastings two thousand gallons prime quality winter oil," were held to amount to a warranty that the article sold agreed with the description; and in *Henshaw* v. *Robins*, 9 Met. 83, 87, it was said that the doctrine laid down in that case has ever since been considered as the settled law in this Commonwealth. So in *Chisholm* v. *Proudfoot*, 15 U. C. Q. B. 203, it was held that, where a manufacturer of flour marked it as of a particular quality, viz. " Trafalgar Mills Extra Superfine," it amounted to a warranty of its being of such a quality. A similar doctrine may be found in *Hogins* v. *Plympton*, 11 Pick. 97; *Winsor* v. *Lombard*, 18 Pick. 57, 60; *Forcheimer* v. *Stewart*, 65 Iowa, 593; and *Mader* v. *Jones*, 1 Nova Scotia, 82. In *Gardner* v. *Lane*, 9 Allen, 492, and 12 Allen, 39, it appeared that the statutes provided for the preparation, division into different qualities, packing, inspecting, and branding of mackerel, and it was held that, if a certain number of barrels of No. 1 mackerel were sold, and by mistake barrels of No. 3 mackerel were delivered, no title passed to the purchaser, and that the barrels of No. 3 mackerel thus delivered by mistake might be attached as property of the vendor, and that each different quality, after being thus prepared for market, was to be regarded as a different kind of merchandise, so that no title passed to the vendee ; there being no assent on the part of the vendee to take the No. 3 mackerel in place of those which he agreed to buy.

Now, if the words " as per samples " had not been in the bought note, it would be quite plain that the present case would fall within the ordinary rules above given. But the

insertion of those words raises the inquiry whether they limit the implied warranty of the vendor, so that, if the rubber sold was equal in quality to the sample, he would be exonerated from liability, though it was not entitled to be classed as of the second quality. If no other meaning could be given to the words "as per samples," except that they alone were to be considered as showing the quality of rubber to be delivered, the argument in favor of the defendants' view would be irresistible. So, if there was a plain and necessary inconsistency between the two descriptions of the rubber, it might perhaps be successfully contended that the vendor's obligation was only to deliver rubber which would conform to the inferior quality described; that is to say, that, in case of such inconsistency, the words "as per samples" should prevail, and the words "of second quality" be rejected. If it were to be held that the vendor's obligation was fulfilled by delivering rubber of a quality equal to the samples, though it was not of the second quality, then the words "of second quality" would mean nothing, or they would be over-borne by the words "as per samples." But if it is found that the bought note admits of a reasonable construction, by which a proper significance can be given both to the words "as per samples" and also to the words "of second quality," there will be no occasion to disregard either.

Cases are to be found in the books, where such a construction has been given to contracts of sale. Thus, in *Whitney* v. *Boardman*, 118 Mass. 242, a sale of Cawnpore buffalo hides, with all faults, was held to mean with such faults or defects as the article sold might have, retaining still its character and identity as the article described; and the court cited with approval the case of *Shepherd* v. *Kain*, 5 B. & Ald. 240, where there was a sale of a copper-fastened vessel, to be taken "with all faults, without allowance for any defects whatsoever," and this was held to mean only all faults which a copper-fastened vessel might have; the court saying, by way of illustration, "Suppose a silver service sold 'with all faults,' and it turns out to be plated." So in *Nichol* v. *Godts*, 10 Exch. 191, an agreement for the sale and delivery of certain oil, described as "foreign refined rape oil, warranted only equal to samples," was held to be not complied with by the tender of oil which was not foreign refined rape oil,

although it might be equal to the quality of the samples. The decision of this case has stood in England, though not without some questioning at the bar. See *Wieler* v. *Schilizzi,* 17 C. B. 619; *Josling* v. *Kingsford,* 13 C. B. (N. S.) 447; *Mody* v. *Gregson,* L. R. 4 Ex. 49; *Jones* v. *Just,* L. R. 3 Q. B. 197; *Randall* v. *Newson,* 2 Q. B. D. 102.

In the present case, by a fair and reasonable construction of the bought note, effect can be given to both of the phrases used to describe the rubber. Construed thus, the article sold was one hundred and two bales of Ceara rubber, of the second quality, and as good as the samples. The rubber delivered was, in fact, Ceara rubber; there was no question that it was of the right kind. But it was not of the second quality. There is no necessity to disregard the words describing the rubber as of the second quality. They signified a distinct and well known, though not absolutely uniform, grade of rubber. There was no exact standard or dividing line between rubber of the second quality and rubber of the third quality, any more than there is between daylight and darkness. But nevertheless a decision may be reached, and it may be easy to reach it in a particular case, that certain rubber is or is not of the second quality. This general designation being given, the specification " as per samples " being also included in the note, the rubber must also be equal to the samples. It must be rubber of the second quality, and it must be equal to the samples. If it fails in either particular, it is of no consequence that it conforms to the other particular. There is no inconsistency in such a twofold warranty, and this rubber having been found to be not of the second quality, the warranty was broken, without regard to the question whether or not it was equal to the samples.

The fact that the plaintiffs had an opportunity to examine the rubber, and actually made such examination as they wished, will not necessarily do away with the effect of the warranty. The plaintiffs were not bound to exercise their skill, having a warranty. They might well rely on the description of the rubber, if they were content to accept rubber which should merely conform to that description. *Henshaw* v. *Robins,* 9 Met. 83. *Jones* v. *Just,* L. R. 3 Q. B. 197. And the exhibition of a sample is of no greater effect than the giving of an opportunity to

inspect the goods in bulk. Notwithstanding the sample or the inspection, it is an implied term of the contract that the goods shall reasonably answer the description given, in its commercial sense. *Drummond* v. *Van Ingen,* 12 App. Cas. 284. *Mody* v. *Gregson,* L. R. 4 Ex. 49. *Nichol* v. *Godts,* 10 Exch. 191. In the two former of these cases it was held that there might be, and that under the circumstances then existing there was, an implied warranty of merchantable quality, notwithstanding the sale was by a sample, which sample was itself not of merchantable quality, the defect not being discoverable upon a reasonable examination of the sample.

The point urged in the defendants' argument, that the plaintiffs' remedy was destroyed by their acceptance of the goods, was not taken at the trial, and no ruling was asked adapted to raise the question as to the effect of such acceptance.

For these reasons, in the opinion of a majority of the court, the entry must be          *Exceptions overruled.*