12966

## RICHMOND PRESSED METAL WORKS v. HALEY

(154 S. E., 412)

*Messrs. E. M. Blythe* and *Williams, Williams & Henry,* for appellant,

*Messrs. Haynesworth & Haynesworth,* for respondent,

August 19, 1930.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an appeal from a judgment in favor of the plaintiff entered upon a verdict directed by the presiding Judge, his Honor, Judge Mauldin.

The action was upon an open account on which the plaintiff alleged that there was a balance of $2,750.00 with interest from November 1, 1925, due by the defendant to it. The account was for the manufacture of certain stoves and accessories. The defendant answered, interposing a general denial and a defense of breach of warranty in the equipment of the stoves with certain ill-fitting and defective castings, with a counterclaim for damages by reason of said breach.

The cause came on for trial before his Honor, Judge Mauldin, and a jury at June term, 1928. At the close of the testimony the plaintiff moved for a directed verdict in its favor, which motion was granted, and a verdict was returned in

favor of the plaintiff under this direction for $2,750.00 with interest from November 1, 1925. The defendant has appealed.

It appears that one Meier was the inventor of a certain type of heating stove and had sold a half interest in his patent to the defendant Haley, with whom he formed a partnership for the manufacture and sale of the stoves, and that his interest in the patent and in the partnership was later assigned to the defendant.

Haley admits that the outside of the stove was manufactured in accordance with the design furnished by Meier, but he claims that Meier did not furnish the specifications for the fire box or inside grating, but that this was provided by the plaintiff and was improperly constructed in the following particulars: (1) That there was an air space left between the grating and the stove; (2) in that the grating was not of sufficient thickness and durability to withstand the heat; and (3) that the parts of the grating were not properly grooved, proportioned, and linked together.

The plaintiff claims that under the evidence the only reasonable conclusions are:

(1) That the fire box or grating was made in accordance with the design and instructions of Meier approved by the defendant.

(2) That after full opportunity for inspection and knowledge of the character of the grating, the defendant (a) in June, July, and August ordered out and received 716 stoves and paid for the same without complaint; (b) from September 1st to October 15th he ordered out and accepted without complaint 243 additional stoves, the other 41 stoves being held subject to his order, and made several payments upon the purchase price; and (c) not until March 29th did the defendant make any claim that the fire box had not been manufactured in accordance with instructions.

In the fall of 1924 the plaintiff made for Meier a sample stove according to the design furnished them. This stove

was brought by Meier to Greenville, and Haley, after inspecting it and seeing how it operated, purchased a half interest in the patent. On December 10, 1924, Haley and Meier went to Richmond, carrying the model stove, and Haley entered into a contract with the plaintiff for the manufacture of a set of dies for the manufacture of the sheet metal parts of the stove at the price of $4,685.00. These dies were manufactured and the price paid. The patterns for the fire box or grating were made by one of the stove companies in Richmond in accordance with the design and specifications furnished by Meier, and Haley paid for these patterns. Meier's design called for an air space between the grate and the wall of the stove. On January 24, 1925, Haley gave to the plaintiff a written order for 300 stoves complete (with fire box) at $15.50 each, and for the parts of 700 stoves (without fire box) at $10.00 each. On May 21, 1925, Haley went to the office of the plaintiff in Richmond. The plaintiff had manufactured the parts for one of the stoves and these parts were assembled in Haley's presence. He then gave a written order to the plaintiff modifying the order previously given so as to provide that the entire 1,000 stoves should be made complete with grates, and he brought back with him to Greenville the stove that had been manufactured and assembled.

That the dies for the stove and the patterns for the fire box were made in accordance with the designs furnished by Meier, and that he supervised the manufacture of these dies and patterns and of the 1,000 stoves admits of no reasonable doubt.

During the months of June, July, and August, 1925, Haley ordered out 716 of the stoves. These were accepted by him and the contract price paid in full. They were identical in design and construction with the stove, which in May Haley had carried back to Greenville and which he was keeping in his store window.

The remaining 284 stoves were manufactured under the

supervision of Meier, and between September 1st and October 15, 1925, the plaintiff, on Haley's order, shipped to him 243 of these stoves. Haley accepted these stoves without complaint. The other 41 stoves were manufactured and are held subject to Haley's order.

In September, 1925, Haley purchased Meier's interest in the patent and in the business. He then went to Richmond and opened negotiations for the manufacture of 1,000 additional stoves. The parties, however, did not agree as to the price.

Haley made no complaint as to the stoves but failed to remit the price. In December, 1925, Mr. House, the president of the plaintiff corporation, came to Greenville for the purpose of collecting from Haley the amount then due, to wit, $4,483.12—this including three small items, as to which there is no dispute.

Haley paid House $483.12 and agreed to pay the remainder of the account in installments of $250.00. He called Mr. House's attention to the fact that the fire box did not fit, but he made no claim that this alleged defect was attributable to the plaintiff.

Following the above arrangement, Haley made five payments of $250.00 each on the following dates: January 25 and 30, February 8 and 20, and March 15, 1926. This left a balance of $2,750.00 with interest from November 1, 1925.

In March, 1926, the plaintiff wrote Haley a letter threatening suit, and *thereupon Haley for the first time made a claim that the plaintiff was responsible. for the alleged defects in the fire box and declined to pay.*

When Haley received the 716 stoves delivered him in June, July, and August, 1925, any ordinary inspection would have discovered the air space between the fire box and the stove, and would have discovered the manner in which the parts of the fire box were fitted and held together. Haley accepted these stoves and paid for them. Not only so, but after this he purchased Meier's interest and then sought to

have the plaintiff manufacture 1,000 more of the same kind of stove. Not only so, but he ordered out, received, and accepted 243 of the remaining stoves and has paid nearly one-half of the contract price therefor.

The testimony which Haley gave on direct examination, implying that the plaintiff assumed the responsibility of making the patterns and of manufacturing a suitable fire box, is entirely neutralized by (1) the fact that these patterns were made and the fire box manufactured under Meier's supervision, and (2) the further fact that Haley, on his cross examination, admitted that in a suit which he had brought against Meier, and in which he recovered a verdict of $37,000.00, he had alleged in his sworn complaint that the design was worthless and unworkable, and charging Meier with responsibility for these very defects, to wit, that the fire box did not closely fit the stove but left air spaces, and that the parts of the fire box were not fitted and joined; and Haley admitted that he testified on the trial of that case that these defects were not in the manufacture, and that the plaintiff was not responsible for them, but that they were attributable to Meier..

Haley testified in that suit against Meier that Meier had told him that: "He had this set-off (air space) properly to protect the safety of the stove. He said by leaving the air space this blue metal would be protected. That was his idea of having it changed."

Haley admitted that, in the action against Meier, he had charged under oath that the defects in the stove "were in the plans and specifications which were furnished by Meier and not in the construction."

And he also admitted that on the trial of that case he testified to this fact.

And he admitted at the trial of this case that his statement made under oath at the trial of the *Meier case* was that the defects were due to Meier's fault.

He admitted that Meier during the manufacture of the stoves was in Richmond looking after the manufacture of the stoves. That Meier "assured me that he would stay right there and see that the stoves were manufactured and made according to specifications. * * * He stayed to supervise the construction of the stoves and to see that they came out on time."

He furthermore admitted that the stoves received by him "were made up there at the factory under Meier's direction and supervision."

He furthermore admitted that when he was in Richmond on May 21, 1925, he changed the order, which he had previously made, so as to provide that all of the 1,000 stoves should be completed with the fire box; and that while he was in Richmond on this occasion the stove which he brought back as a sample stove was assembled and put together in his presence, and that "we waited until late in the afternoon to get some of the castings." That he saw the castings and brought them back with him. That he saw that the castings were lighter and saw the inside works and how they were put together.

In other words, Haley admitted that his partner, Meier, had furnished the design and the instructions for the stoves, including the fire boxes.

Haley also admitted that, in May, 1925, he was in Richmond, and at that time all the parts entering into the first stove manufactured were assembled and put together in his presence. He accepted this stove as in compliance with the contract, and brought it to Greenville, where he kept it as a sample. He knew that the other 999 stoves would be manufactured and made identical in design and construction with this one. He permitted the plaintiff to manufacture the remaining 999 stoves, including the fire boxes, in accordance with this design. And he ordered out and accepted the remaining stoves, all of them identical in design and construction with the sample stove.

The foregoing facts, together with the further facts that he has paid all of the purchase price for the stoves, except $2,750.00, and that he made no complaint until December, 1925, and even then did not charge the alleged defects to the plaintiff, present an absolutely conclusive case of liability.

There can be no reasonable doubt (1) that the stoves were manufactured in accordance with the design and instructions given by Haley and his partner, and (2) that after the manufacture of the stoves, and after full opportunity for inspection, Haley accepted them, and without making any complaint within a reasonable time, thereby, under the law, waiving any claim for defects.

In a sale of goods by sample, the vendor is only bound to supply goods equal to the sample, and does not warrant them to be fit for any particular purpose. *Kauffman Mill Co. v. Stuckey,* 37 S. C., 7, 16 S. E., 192.

Where a manufacturer undertakes to build a machine according to a model furnished, there is no warranty except that it will be in accordance with the model. *Thompson Manufacturing Co. v. Gunderson,* 106 Wis., 449, 82 N. W., 299, 49 L. R. A., 859. See also note, 15 L. R. A. (N. S.), 850-862.

Where the alleged defect or inferiority is obvious, or may be discovered by reasonable inspection or examination before acceptance, the purchaser, by accepting the goods, waives the right to allege inferiority of quality which was obvious to him. *Southern Coal Co. v. Rice,* 122 S. C., 484, 115 S. E., 815; *Little v. Veneer Mfg. Co.,* 130 S. C., 372, 126 S. E., 42; *Griggs-Paxton Shoe Co. v. Friedheim,* 133 S. C., 458, 131 S. E., 620.

The stoves were manufactured prior to November 1, 1925. All of them, except 41, had been delivered and accepted. These 41 stoves had been manufactured and were held subject to Haley's order.

The price fixed by the written agreement was $15.50 per stove. This price was payable when the stoves were manufactured.

*The claim was liquidated. It was for 284 stoves, at $15.50 per stove, $4,402.00.* To this should be added the three small claims admitted to be due, and from this the payment should be deducted.

Every factor entering into the calculation was liquidated and the determination of the amount due involved only an arithmetical calculation.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

Mr. Chief Justice Watts and Messrs. Justices Blease and Stabler concur.

Mr. Justice Carter (dissenting) : I think the testimony in the case made an issue for the jury on the questions raised by the pleadings. I therefore dissent.