14660

MONROE v. WOOD

(197 S. E., 39)

December, 1936.

*Mr. A. F. Woods,* for appellant,

*Mr. Joe P. Lane,* for respondent,

April 6, 1938.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

December 30, 1929, the plaintiff entered into a written contract with the defendant, I. T. Wood, which provided for the lease by I. T. and S. P. Wood to M. M. Monroe of their two-thirds interest in an ice manufacturing plant in the Town of Latta, S. C. The plaintiff already owned a one-third interest in the plant. Subsequent to the execution of the contract, I. T. Wood acquired the interest of S. P. Wood in the property leased to Monroe, and assumed all of the obligations of S. P. Wood under the contract.

The contract of lease included the building and machinery. It also provided that I. T. Wood and S. P. Wood would sell ice to Monroe at the rate of 25 cents the hundred pounds delivered at Latta. Another provision of the contract was that I. T. and S. P. Wood should have the right at any time to remove and convert to their own use any of the machinery and appliances in the ice manufacturing plant at Latta, they to be charged with one-third the cost price of any such machinery or appliances thus removed. The contract was to run for one year, with the option to Monroe of renewing it for four years longer. At the end of the first year M. M. Monroe exercised his option and renewed the contract for four years. Monroe agreed to pay as rent for the leased premises the sum of $240.00 a year, payable $20-.00 per month. Monroe continued to occupy the leased premises for the months of January, February, and March after the expiration of the lease on December 30, 1934. At the end of March, 1935, Wood informed Monroe that he would charge him more for ice, whereupon Monroe vacated the premises and brought suit against Wood. This action was begun May 16, 1935, and sought to recover damages in the sum of $1,454.10; the items of damages alleged were, the

failure of Wood to pay Monroe his share of the cost of the machinery and appliances removed by Wood from the leased premises, and $1,454.10, which loss plaintiff incurred when defendant breached the contract, and plaintiff was forced to buy his ice at Dillon and haul it to Latta.

To this complaint defendant duly answered. April 15, 1936, the plaintiff served an amended complaint, containing the additional allegations that by reason of the breach by defendant of the contract to deliver ice to plaintiff at Latta, plaintiff was compelled to haul his ice at a cost of $1,316.30, that the ice which he got from defendant was of inferior quality, and by reason of its loss in weight he suffered a further loss of $1,640.00; that the total sum due to plaintiff by defendant is $4,616.37. That, after deducting therefrom rent for five years, $1,200.00, and $608.30 paid plaintiff for his share of the cost of the machinery, making a total credit of $1,808.30, there remained due to plaintiff by defendant the sum of $2,808.30.

The answer to the amended complaint was a general denial; that if there was any defect in the ice—which is denied—the quality was obvious to plaintiff and could have been discovered by plaintiff, yet plaintiff accepted and used it. Further, defendant set up by way of counterclaim, the right to recover of plaintiff the $1,478.48 arising out of the transaction between the parties under the contract between them. The following items are set out in the answer to the amended complaint:

| | |
|---|---:|
| Rental of machinery for four years | $ 139.20 |
| Amount paid Cox for plaintiff | 472.32 |
| Five years' rental under contract | 1,200.00 |
| Unpaid ice account | 601.90 |
| Town of Latta taxes | 6.40 |
| | $2,419.82 |
| Less credit for machinery | 941.31 |
| | $1,478.51 |

The case came on for trial before Judge Dennis and a jury.

At the conclusion of all the testimony, counsel for the defendant made a motion for a directed verdict as to the item of $1,640.00 which plaintiff claims he suffered by reason of the inferior quality of the ice which the defendant sold him.

The motion was made on the ground that if there was any defect in the ice plantiff saw it, admits that it was obvious, yet he accepted it and paid for it. The motion was refused, the Court saying: "The question in my mind that inclines me to submit the matter to the jury is that this man—it wasn't like where he could go into a store and buy ice or any other ice plant—he either had to get the ice from this defendant or go out of business. That might bring an element that probably might require me submitting that to the jury."

The jury found for plaintiff.

Motion for new trial was made on the following grounds:

"1. The testimony being uncontradicted that the alleged defects in the quality of the ice were obvious, and that the plaintiff nevertheless accepted the ice with full knowledge of its alleged defective quality, if any, were waived as a matter of law, thereby precluding any recovery on account of defective quality. Consequently the Court was in error in submitting as questions to be passed upon by the jury the issues of defective quality and waiver.

"2. The Court in any event was in error in submitting as questions to be passed upon by the jury the issues of defective quality of the ice and waiver, insofar as the dealings of the parties after the first year of the contract were concerned, because the testimony is wholly undisputed that the plaintiff voluntarily exercised his own option to continue the contract in effect after the first year, and to buy for cash and accept the defendant's ice, in spite of the fact that the alleged defective quality of the ice was obvious and at all times well known and fully appreciated by him.

"3. If the Court properly submitted as questions to be passed upon by the jury the issues of alleged defective

quality of the ice and waiver for the period covered by the first year of the contract, nevertheless the Court was in error under any view of the case in so charging the jury that these questions could be considered for the whole period of the contract, because in any event there was plainly a waiver as a matter of law of the alleged defective quality after the first year of the contract, when the testimony showed wholly without any dispute that the plaintiff voluntarily exercised his own option to continue the contract in effect after the first year and to buy for cash and accept the defendant's ice, in spite of the fact that the alleged defective quality of the ice was obvious and at all times well known and fully appreciated by him.

"4. The verdict of the jury was inconsistent with the instructions of the Court, and plainly contrary to the weight of the evidence."

The motion was refused. The appeal comes to this Court on nine exceptions.

We shall consider those issues which pertain to defective ice and waiver by plaintiff of such defect—if it existed—by accepting and using it, it being an obvious and patent defect by plaintiff's own admission. We set out the exceptions which relate to this issue:

"1. The Court erred in overruling defendant's motion for a directed verdict in his favor as to plaintiff's claim of loss and damage on account of alleged defective ice for the reasons stated in defendant's motion, to wit: because the testimony shows without contradiction or dispute that the defects, if any, were obvious and known to the plaintiff, and that he nevertheless accepted and used the ice, thereby waiving the defects, if any, as a matter of law.

"2. The Court erred in charging the jury so as to submit as questions to be passed upon by the jury the issues of alleged defective quality of the ice and waiver or non-waiver thereof, because the testimony was uncontradicted that the alleged defects in the ice were obvious, and that the plaintiff nevertheless accepted and used the ice with full knowledge

and appreciation of the alleged defects, thereby waiving the defects, if any, as a matter of law, and precluding any right to recovery on account of the alleged defects.

"3. If the Court properly submitted as questions to be passed upon by the jury the issues of alleged defective quality of the ice and waiver or non-waiver thereof for the period covered by the first year of the contract, nevertheless the Court erred under any view of the case in so charging the jury that these questions could be considered for the whole five-year period of the contract, because in any event there was plainly a waiver by plaintiff as a matter of law of the alleged defective quality of the ice after the first year of the contract, in that the testimony showed wholly without any dispute or contradiction that the plaintiff voluntarily exercised his own option to continue the contract in effect after the first year and to buy (wholly for cash after the second year), and accept and use the defendant's ice in spite of the fact that the alleged defective quality of the ice was plainly obvious and well known and fully appreciated by the plaintiff at all times, both at the time he exercised his option to extend the contract and thereafter."

The appellant states the questions made by his appeal, along the line of our consideration, as follows:

1. Was there error in refusing defendant's motion for a directed verdict or a peremptory instruction to the jury to find in defendant's favor as to plaintiff's claim based on an alleged defective quality of ice sold to plaintiff by the defendant?

2. Was there error in the charge to the jury as to plaintiff's claim based on defective ice?

There was no issue to submit to the jury as to whether the ice was defective. Plaintiff said it was defective to such an extent that it was patent and obvious to him all the time he was buying it. The motion for directed verdict made by defendant as to this claim of defective ice was that even if the ice was defective plaintiff had waived that defect by accepting the ice and using it.

That was a question of law which should have been decided by the Judge. Instead, he left it to the jury to say whether if the plaintiff could not buy ice elsewhere than from defendant he had waived the defects in the ice. We do not think that is the law in this jurisdiction. For many years the Courts here, and elsewhere, have held that one seeing and knowing the defect in a commodity nevertheless receives it, he cannot afterwards complain of the defects.

In the case of *Griggs-Paxton Shoe Co. v. Friedheim & Bro.,* 133 S. C., 458, 131 S. E., 620, it appears that the merchant Friedheim had bought shoes from the plaintiff. They came in bound boxes and were put in the warehouse and not inspected for thirty days. When inspected, Friedheim undertook to reject them, and returned them to the shipper. When sued for the purchase price, among other defenses, he claimed that he was entitled to a reasonable time to inspect the shoes. The case went to the jury and judgment went against Friedheim. On appeal this Court said, *inter alia* (page 623) :

"It is a matter of common knowledge in this state that the fall trade is at its best in the time covered by the period during which these goods were kept in the store of the defendant, and, as a matter of law, this court holds that the defendant, having kept them during a period of more than one month, is deemed to have accepted them and waived any defect either of workmanship or of quality. To hold otherwise would subject the seller to the whims of the purchaser.

"This does not violate the rule that this is ordinarily a question of fact to be left to the jury. *When there is no dispute about a fact, and it is subject to only one reasonable inference, there is no longer anything for the jury to determine.*" (Italics added.)

If the plaintiff had refused to accept the ice which he claims was defective, he would have had a cause of action against defendant for all relevant damages he may have suffered. But when for five years he accepted daily the alleged defective ice and used it he waived his right to sue for

damages. As Mr. Acting Associate Justice Purdy said in the *Friedheim case, supra:* "To hold otherwise would subject the seller to the whims of the purchaser."

In the case of *Woods v. Cramer,* 34 S. C., 508, 13 S. E., 660, Mr. Justice McIver, for the Court said (page 663): "We think there is as little doubt that, even if the goods did not in fact correspond with the sample, yet if the defendants accepted them, they would be liable for the contract price; for, while the defendants would have had the right to reject the oats if they did not substantially compare with the samples by which they were sold, yet if they nevertheless chose to accept them, that would be a waiver of their right of rejection and they would be bound to perform the contract to pay the stipulated price."

In the case of *Little et al. v. Veneer Mfg. Co.,* 130 S. C., 372, 126 S. E., 42, this is found in syllabus 2: "Buyer, having accepted and paid full contract price of lumber, could not recover damages on theory that lumber failed to conform to specifications."

In the case of *Smith Bros. Grain Co. v. Adluh Milling Co.,* 128 S. C., 434, 122 S. E., 868, this was said (page 871): "The buyer has, of course, a reasonable time within which to inspect the goods; but if he knows of the defects, or accepts them without inspection after the lapse of a reasonable time, he is held to have waived all objections to their condition."

In the case of *Brooke v. Milling Co.,* 78 S. C., 200, 58 S. E., 806, 125 Am. St. Rep., 780, this occurs (page 808): "By acceptance of the goods, the defendant waived the right to allege inferiority of quality which was obvious to him."

In *Building Supply Company v. Jones,* 87 S. C., 426, 69 S. E., 881, this is found (page 882): "The general rule is that if, before acceptance of goods, material variance from the quality contracted for is so obvious that the purchaser has observed it, or by ordinary inspection would have observed it, and nevertheless accepted the goods, he will be held to have waived the variance from the quality he was

entitled to demand." Citing *Woods v. Cramer,* and *Brooke v. Milling Co., supra.*

In the case of *Richmond Metal Works v. Haley,* 157 S. C., 426, 154 S. E., 412, it was announced (page 415): "Where the alleged defect or inferiority is obvious, or may be discovered by reasonable inspection or examination before acceptance, the purchaser, by accepting the goods, waives the right to allege inferiority of quality which was obvious to him." Citing cases.

In the case of *Bond Bros., etc., v. Claussen's Bakeries,* 184 S. C., 95, 191 S. E., 717, 113 A. L. R., 675, filed June 4, 1937, Mr. Justice Baker, delivering the opinion of the majority of the Court, said (page 719):

"This principle, by reason of the facts of the cases heretofore coming before this Court, has been applied to quality only, but it does not require even an extension of the principle to make it applicable also to quantity, and we can see no good reason why it should not as well apply to quantity. Respondent takes the position that, in fact, the case of *Greenwood Mill v. Tolbert,* 105 S. C., 273, 89 S. E., 653, Ann. Cas., 1917-C, 338, is authority for this position. Inferentially, this may be true, although a careful reading of this case will not bear out such a conclusion.

"In the *Greenwood Mill-Tolbert case,* the defect was latent and hidden, and the purchaser was unable to detect the defect at the time of purchase. In the case under consideration the 'defect' was 'on the surface,' and readily ascertainable by the respondent. And in this case the defense of estoppel by waiver is pleaded, it being appellant's contention that any loss which respondent may have suffered was due to the negligence of respondent in failing to count the deliveries of bread when made, well knowing, as shown by the testimony, that appellant had no means of knowing— of more than suspecting, in a most general way—that the deliveries were short; and respondent having an absolute, easy, and open manner and method of ascertaining if the correct and accurate deliveries were actually being made, and

having failed to use even ordinary care, it has waived any question as to the quantity of the deliveries, and is thereby estopped from maintaining an action therefor."

The cases of *Southern Coal Company v. Rice,* 122 S. C., 484, 115 S. E., 815; *Brooke v. Milling Co., supra; Woods v. Cramer, supra; Vanderhorst v. McTaggart,* 2 Bay, 498; *Griggs-Paxton Shoe Co. v. Friedheim & Bro., supra; Mitchell v. McBee,* 1 McMul., 267, 36 Am. Dec., 264, are cited in support of the conclusion of the opinion.

It seems wholly useless to cite other authorities to establish the postulate that it is the rule long established in this jurisdiction that: "That if one accept an article the defect of which is obvious, or discernable upon reasonable inspection, and nevertheless accepts the article, he waives the right to complain of the patent defects."

We repeat that if it be true that the ice sold plaintiff by defendant was defective, and plaintiff cannot be heard to say that it was not because he and his witnesses specifically swear that it was, and he predicates his complaint in part on that allegation, and it is not possible for him to deny that the defect was obvious, for he has so declared on oath, then the only question submitted to the Court by defendant's motion for a peremptory instruction to the jury, was one of law and should have been granted.

The respondent cites, as against the array of authorities above cited and quoted, the case of *Youmans v. Chisolm,* 165 S. C., 337, 163 S. E., 884. We can find in this case nothing pertinent to the issue of waiver made in the present case.

And this observation applies with equal force to the case of *Gaillard v. Gaillard,* 175 S. C., 297, 311, 179 S. E., 41, quoted by respondent.

Respondent relies on the case of *Griffith v. Newell,* 69 S. C., 300, 303, 48 S. E., 259. The essential difference between that case and the one we are considering is that the *Newell case* grew out of a contract Newell made with the directors of the South Carolina penitentiary, by which the directors contracted to hire to him a certain number of convicts to

work on his farm. When he went for them, they gave him fewer than the number contracted for, but promised he should have the others when they were available. Each time they called on him for the pay of those he had, he paid with the understanding that he would get the other convicts under his contract. Finally, when he refused to pay longer, he was sued, and defended by saying that the failure to get all his convicts caused him to lose his crop. The State replied by saying you have waived your right by paying for what you got. It was then that the Court held that a man who was continually demanding his rights could not be held to have waived them.

There was no question of patent or obvious defect in a commodity, as is the question in the present case. Day after day for five years Mr. Monroe received, accepted, and paid for, and used ice, a commodity of commerce, which he claims was defective.

The doctrine of waiver, shown by the numerous authorities we have cited and quoted, conclusively shows that his claim for damages now cannot be sustained.

We hold that the motion for peremptory instruction made by defendant as to the claim of defect in the ice should have been granted.

Having reached this conclusion, and inasmuch as the case must go back, we prefer not to discuss any other issues in the case.

Judgment reversed, and case remanded for retrial.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BAKER and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.