14674

SOUTHERN BRICK COMPANY v. McDANIEL

(196 S. E., 893)

*Mr. O. L. Long,* for appellant,

*Messrs. Blackwell, Sullivan & Wilson,* for respondent,

April 27, 1938.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The plaintiff brought suit against the defendant to recover the balance of the purchase price alleged to be due for certain brick furnished to the defendant, and which were used in the construction of the latter's dwelling house in the City of Laurens. The balance claimed amounted to $123.63, and the number of brick involved is about 9,500.

The defendant interposed a counterclaim for damages based upon allegations that he went to the brickyard of the plaintiff near Ninety Six, in this State, and selected a par-

ticular type of brick to be used in the construction of his new residence, of a certain color and texture, which the defendant agreed to deliver upon the defendant's lot. The brick selected were of rough finish, and contained a certain number of vertical lines or scratches on the face. It is alleged that pursuant to the contract entered into between the parties, the plaintiff furnished to the defendant 24,500 brick of the kind specified; but that contrary to the agreement, the plaintiff, on November 14, and November 20, 1935, delivered about 9,500 brick of a different texture, but so nearly alike and similar to the original brick selected by the defendant that the difference was not detected until they were placed and used in the construction of the house, when it was too late to remove them. The defendant contends that the plaintiff breached its contract; that the appearance of his house is marred by being constructed of brick of two different types, and he claims damages.

Upon trial, the lower Court directed a verdict for the full amount in favor of the plaintiff, upon the ground that any damage suffered by the defendant was due to his own negligence in failing to inspect the brick delivered on his premises, and in accepting the same. The Court based its decision upon the recent case of *Bond Bros. Cash & Delivery Grocery v. Claussen's Bakeries,* 184 S. C., 95, 191 S. E., 717, 719, 113 A. L. R., 675.

The only question before us on this appeal is whether the lower Court erred in granting the motion for a directed verdict in favor of the plaintiff.

The material facts in the instant case are either admitted or uncontradicted. The difficulty arises in the application of well-established principles of law. The issue in the case largely turns upon the effect to be given the action of the defendant in signing for the brick in question when they were delivered upon his yard, without making a reasonable inspection of them, or any inspection at all, for the purpose of ascertaining if they conformed to the contract, and were

of the same type, character, and texture of the brick previously selected by him, and already used in his house.

No question of quality or quantity is involved in the appeal. The brick originally selected by the defendant, in person, was of rough texture and contained from 20 to 21 vertical scratches on the exposed surfaces. It is admitted that 24,500 of this type of brick were delivered to the defendant. Discovering that he needed more brick to complete his house, he ordered an additional number (the subject of this action), which the plaintiff agreed it would furnish, "of the same kind." This is not denied. On the trial the plaintiff admitted that "inadvertently about nine thousand brick were sent to him (defendant) different from the kind he bought and had in his house."

When the brick in question were delivered on the defendant's yard, he signed and receipted for it, but made no inspection of it, relying upon the express warranty and agreement of the plaintiff that the brick so delivered would be identical with and of the same kind as that which had been previously delivered. The plaintiff was away from home for several days after this, and when he returned about 14 courses of these brick had been placed in the front porch and front wall of his house. The bricklayers at once called his attention to the fact that the bricks were of a different texture and presented a different appearance. He immediately complained to the plaintiff that it had not delivered to him the brick which he had selected. The plaintiff's employee, the manager of the brickyard, admitted on the stand that the plaintiff had delivered brick of two different types, hard to distinguish, and that the brick presented a different appearance by contrast when placed in the house.

The plaintiff, while admitting this, contends that the defendant is estopped to claim damage through this mistake, by reason of his own gross negligence in failing to inspect the brick delivered in November; that if such inspection had been made the difference in the brick would have been

detected and the mistake rectified. The defendant contends that it was not incumbent upon him to inspect, and furthermore, that if a reasonable inspection had been made the difference in the brick would not have been readily observable because of their similarity with previous deliveries, and that such dissimilarity did not readily appear until the brick were actually placed in the wall of the house, and that for this reason his failure to inspect could have no bearing upon the matter.

We held in the case of *Southern Coal Co. v. Rice,* 122 S. C., 484, 115 S. E., 815, 817, that "where the defect or inferiority which constitutes the alleged breach, whether of a condition precedent or of a warranty, is obvious or may be discovered by reasonable inspection or examination before acceptance, the purchaser's remedy is to refuse to accept the goods when delivered. By an acceptance of goods a purchaser waives the right to allege inferiority of quality which is obvious to him. *Brooke v. Milling Co.,* 78 S. C., 200, 205, 58 S. E., 806, 125 Am. St. Rep., 780; *Woods v. Cramer,* 34 S. C. [508], 516, 13 S. E., 660; *Vanderhorst v. McTaggart,* 2 Bay, 498; *Mitchell v. McBee,* 1 McMul., 267, 36 Am. Dec., 264. But, if no reasonable inspection is possible, or if the alleged breach is not discoverable by reasonable inspection before delivery, then acceptance is not to be regarded as complete or absolute until the purchaser has had reasonable opportunity for a practical and effective inspection or examination. Note, 35 L. R. A. (N. S.), 281, 282. In such case, if after discovery of the defect the purchaser does not promptly notify the seller and offer to rescind by returning the goods or placing them at seller's disposal, there is an acceptance which is evidence of waiver of any objection that the goods do not correspond to the description. But such acceptance is not conclusive evidence of waiver (*Greenwood Cotton Mill v. Tolbert,* 105 S. C. [273], 278, 89 S. E., 653, Ann. Cas., 1917-C, 338; *Carter & Harden v. Walker,* 2 Rich., 40; *Kauffman Mill Co. v. Stuckey,* 37 S. C., 7, 16 S. E., 192; *Id.,* 40 S. C., 110, 18

S. E., 218; *Ramsey v. Hill,* 92 S. C., 146, 75 S. E., 366; *Campion v. Marston,* 99 Me., 410, 59 A., 548), and the question ordinarily is one for the jury under all the facts and circumstances of the particular case."

In the case at bar the appellant promptly notified the plaintiff that the brick last delivered did not correspond in character and texture with the brick previously delivered to him and already used in the construction of the house. And it is clearly inferable from the testimony that the difference was not obvious, and did not become discernible until the two types of brick were actually laid in the house. We do not think that the conduct of the defendant under the peculiar facts in this case amounted to an acceptance or a waiver as a matter of law, nor do we think that the *Bond Bros. case* is at all controlling. In the case at bar the defendant had the right to rely upon his agreement with the plaintiff, which amounted to an express warranty, that the type of brick he ordered would be delivered unless the testimony should show as a matter of law that he waived this requirement. 55 C. J., Sales, § 694, and see cases cited in note.

The defendant in the *Bond Bros. case,* a retail bakery, accepted daily deliveries of bread for more than a year, without any check to ascertain if the deliveries were correct, and then after that time brought suit for a shortage. This Court held that "having had every opportunity of checking the deliveries, and having failed so to do, it has waived the right and is estopped from coming into Court and undertaking to prove a shortage in such deliveries. The testimony shows such gross negligence and gross carelessness on the part of the respondent that this Court, even as to fraudulent acts on the part of appellant's agent, which were made possible by the gross negligence and carelessness of respondent, does not hesitate to invoke the doctrine of estoppel by waiver."

It is obvious that the facts in the *Bond Bros. case* are not analogous to the facts in this case, and that case affords no authority for the directed verdict in the case at bar.

We think that under the facts in this case the defendant cannot be deemed as a matter of law to have waived his right to rely upon the warranty of the plaintiff, that it would deliver brick to him of the same kind which had been previously ordered and delivered.

It is impossible to lay down a rule on this subject which can be readily applied to the various facts of different cases. Cases may arise where it is apparent that the purchaser could not have relied upon a warranty when he accepted the goods, or that he has waived his right to insist upon such warranty.

The legal principle under discussion has received careful consideration in other jurisdictions. We quote with approval from two cases which we think deal with this question most soundly.

In the case of *Northwestern Cordage Co. v. Rice,* 5 N. D., 432, 67 N. W., 298, 299, 57 Am. St. Rep., 563, cited in our own case of *Southern Coal Co. v. Rice,* the Court said: "But we think it would be an extremely unjust rule to interpret as an implied waiver the conduct of the purchaser in receiving the goods which do not exactly correspond to the warranty, merely because he might, by examination, have discovered the defect. It often happens that the purchaser is so situated that it is necessary for him to accept the article in its defective condition. It would indeed be singular that one who had placed him in this position should be allowed to escape liability on his contract of warranty. In many cases the inference of a purpose to rely upon the warranty is stronger than the inference of a purpose to pay the price of a good article for a defective one. In the case at bar the jury would have been justified in finding that defendant could not, without particular examination, have discovered that the twine was not pure manilla. In favor of one who has warranted an article, the purchaser does not owe the duty of careful inspection. He may rely on the warranty. There is much confusion in the authorities. This is the consequence of too much refinement in reasoning, and the making

of many nice distinctions. The law on this subject should be adjusted to the needs of the business world, and be made as simple as possible. Without attempting to anticipate the exceptions to the general rule which in the future it may be found necessary to establish, we believe it to be in the interests of justice, and to fairly express the sense of business men upon the subject, that whatever form a warranty assumes if there is in fact a warranty, the mere acceptance of the property will not, as a matter of law, bar a recovery for breach of the warranty, although an inspection of the property would have led to a discovery of the breach. Nor will actual knowledge of the defective condition of the thing delivered necessarily preclude a reliance upon the warranty. All the facts are to be laid before the jury, to the end that they may determine whether the purchaser relied on the warranty, and whether he has waived his right to take advantage of its breach. *Gould v. Stein,* 149 Mass., 570, 22 N. E., 47 [5 L. R. A., 213, 14 Am. St. Rep., 455]; *English v. Spokane Commission Co.* [C. C.], 48 F., 196; *Lewis v. Rountree,* 78 N. C., 323; *Best v. Flint,* 58 Vt., 543, 5 A., 192 [56 Am. Rep., 570]; *Polhemus v. Heiman,* 45 Cal., 573; *Tacoma Coal Co. v. Bradley,* 2 Wash., 600, 27 P., 454 [26 Am. St. Rep., 890]; *Hege v. Newsom,* 96 Ind. [426], 431; *English v. Spokane Commission Co.,* 6 C. C. A., 416, 57 F., 451; 2 Benjamin On Sales (6th Am. Ed.), p. 856, note 29; *Dayton v. Hooglund,* 39 Ohio St., 671; *Holloway v. Jacoby,* 120 Pa., 583, 15 A., 487, 6 Am. St. Rep., 737; *Parks v. Morris, etc., Tool Co.,* 54 N. Y., 586; *Zabriskie v. Central, etc., R. Co.,* 131 N. Y., 72, 29 N. E., 1006; *Morse v. Moore,* 83 Me., 473, 22 A., 362 [13 L. R. A., 224, 23 Am. St. Rep., 783]; *Fairbank Canning Co. v. Metzger,* 118 N. Y., 260, 23 N. E., 372 [16 Am. St. Rep., 753]."

In *English v. Spokane Commission Co.,* 9 Cir., 57 F., 451, at page 456, the Court said: "There has been some controversy in the courts as to the right of the purchaser to accept the goods and rely upon the warranty,

some of the authorities holding that where the sale is executory, and the goods, upon arrival at the place of delivery, are found upon examination to be unsound, the purchaser must immediately return them to the vendor, or give him notice to take them back, and thereby rescind the contract, or he will be presumed to have acquiesced in the quality of the goods. But the great weight of authority, as well as reason, is now, we think, well settled that, in cases of this kind and character, if the goods upon arrival at the place of delivery are found to be unmerchantable in whole or in part, the vendee has the option either to reject them or receive them and rely upon the warranty; and, if there has been no waiver of the right, he may bring an action against the vendor to recover the damages for a breach of the warranty, or set up a counterclaim for such damages in an action brought by the vendor for the purchase price of the goods."

Reversed and remanded for new trial.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER concur.

MR. JUSTICE CARTER did not participate on account of illness.