## C. W. ANDERSON HOSIERY CO. v. DIXIE KNITTING MILLS, Inc.

### No. 6560.

United States Court of Appeals Fourth Circuit.

Argued April 15, 1953.

Decided May 11, 1953.

504

In addition to offering the defense that the merchandise was defective, the purchaser filed a counterclaim in which it was alleged that when the defects in the goods were discovered, the parties entered into a supplemental contract wherein they agreed in effect that the buyer should retain the goods and process and sell them for the best price obtainable, and the seller would be responsible for any ensuing loss which the buyer might suffer. The execution of the supplemental agreement was denied by the seller but the issue was not submitted to the jury since the District Judge was of the opinion that the buyer had waived any defects in the goods by retaining them and was therefore liable for the unpaid balance and hence there was no consideration to support the supplemental agreement even if it were made.

■ The evidence stated most favorably to the defendant, as is required in the case of a directed verdict for the plaintiff, may be summarized as follows: Dixie manufactures unfinished nylon hosiery in the "greige". Anderson processes goods of this character and produces the finished article for sale to jobbers and retail merchants. In December, 1950 Anderson agreed to buy Dixie's entire output on condition that Dixie would employ one James Walton as manager of its mill and this condition was met. Deliveries of the "greige" began in March, 1951 and continued until September 14, 1951. For the first few months the quality of the merchandise was good and payments for deliveries were promptly made until the middle of the year when defects were noticed during the processing of the goods and complaints were made which led to negotiations between the parties and the execution of the supplemental agreement.

■ The conduct of the parties after the discovery of the defects bears directly on the question of waiver. Processing of nylon stockings in the "greige" includes putting them on wooden forms and subjecting them to steam whereby they are shrunk into shape and afterwards dyeing them. The defects in the goods furnished by the seller in this case were caused by bad knitting and resulted in irregular lengths of

J. D. Todd, Jr., and Wesley M. Walker, Greenville, S. C. (D. B. Leatherwood, Greenville, S. C., and C. E. Saint-Amand, Newberry, S. C., on brief), for appellant.

James L. Love, Greenville, S. C. (R. L. Brown, Jr., and S. Craig Hopkins, Albemarle, N. C., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This appeal is taken from a judgment for $5944.58 based on a directed verdict in favor of Dixie Knitting Mills, Inc., a North Carolina corporation, for merchandise sold and delivered to C. W. Anderson Hosiery Company, a South Carolina corporation, between March 26 and September 14, 1951. The crucial question for our consideration is whether the evidence justified a directed verdict for the plaintiff or required the submission to the jury of the defense that the goods furnished by the seller were defective and the defects were not waived by the buyer.

heel and leg, which could not be discovered until the stockings were placed on the forms. The sale of stockings slows down in the summer months and hence the delivered goods, which were packed in cartons, each containing from 50 to 75 dozen stockings, were stored in a warehouse on the defendant's premises until they were needed.

Defects in some of the goods were discovered at the end of June, during the slack season. More substantial defects were discovered in August when more goods were removed from the warehouse and put into the process of manufacture. Walton, the manager of the seller, was then notified and negotiations between the two mills followed which culminated in the execution of the supplemental contract on or about October 4. In the meantime certain payments on account were made, that is, $2500 on September 7, $500 on September 14, $1000 on September 21, and $800 on October 4; and these are relied upon as evidence of the acceptance of the merchandise by the buyer with knowledge of its condition. The evidence of the buyer also shows, however, that the managers of the business felt they were amply protected in making partial payments that the seller urgently needed because the balance due on the account at the end of August was over $9,000 and the seller did not dispute the existence of the defects. Moreover, even at the end of August the magnitude of the defects, which ordinarily do not affect more than 8% of goods of this kind, was not realized; and it was not until the goods in the warehouse were manufactured that defects were found in two-thirds of the merchandise. To all of this evidence must be added the fact of the supplemental agreement itself whereby the seller accepted the rejection of the goods and agreed to stand any loss that might result from the processing and sale of the damaged merchandise.

Under the decisions of the Supreme Court of South Carolina this state of facts, in our opinion, required the submission to the jury of the question whether the defendant by its conduct had waived the defects and had accepted the merchandise as complying with the contract. The rule was stated in Reliance Varnish Co. v. Mullins Lumber Co., 213 S.C. 84, 48 S.E.2d 653, where suit was brought for the price of varnish furnished by the plaintiff to a furniture manufacturer and the defendant counterclaimed for damages caused by defects in the goods which were not discoverable until the goods were used. When the inferior quality of the merchandise was observed, the defendant offered to return the unused goods which had been in its possession for more than a year, during which it had made certain payments on account, but the offer was refused. In sustaining a judgment for the defendant on the counterclaim the court said, 213 S.C. at pages 94–95, 48 S.E.2d at page 657:

"It is well settled that where the defect or inferiority of the goods is obvious, or may be discovered by reasonable inspection or examination before acceptance, the purchaser by accepting the goods, waives the right to allege any inferiority of quality which is obvious to him; but if the defect or inferiority is not known and is not discoverable by reasonable inspection before delivery, the purchaser must be given a reasonable opportunity for a practical and effective inspection or examination. When he discovers the goods to be defective, he must act with promptness. If after discovery of the defect the purchaser does not promptly notify the seller and offer to rescind by returning the goods or placing them at the seller's disposal, there is an acceptance which is evidence of waiver of any objection to the inferiority of the goods. The question of waiver is ordinarily one for the jury under all the facts and circumstances of the particular case. Southern Coal Co. v. Rice, 122 S.C. 484, 115 S.E. 815; Southern Brick Co. v. McDaniel, 187 S.C. 243, 196 S.E. 893."

See also Griggs-Paxton Shoe Co. v. Friedheim, 133 S.C. 458, 131 S.E. 620; Richmond Pressed Metal Works v. Haley, 157 S.C. 426, 154 S.E. 412; Monroe v. Wood, 186 S.C. 507, 197 S.E. 39; Johnston Mfg. Co. v. Wilson Thread Co., 4 Cir., 269 F.

555; George v. Crowder, 4 Cir., 287 F. 53.

The judgment of the District Court must be reversed and the case remanded for a new trial in order that the jury may determine whether there were defects in the goods delivered to the buyer and if so, whether the buyer waived the defects and accepted all or any part of the goods after the buyer had a reasonable opportunity to inspect them.. The jury should be instructed to take .into consideration in making its decision all the circumstances attendant upon the delivery, use and disposition of the goods, including the nature of the defects, if any, the time when they were discoverable in the normal course of the business, the buyer's payment on account, and the final dealings between the parties. We do not think that the supplemental agreement can be held void for lack of consideration or that the proof of damages offered in support of the counterclaim was too vague for consideration by the jury. The case must be remanded for a new trial, therefore, on the counterclaim of defendant as well as the claim of plaintiff. See Penney v. Burns, 226 Ala. 273, 274, 146 So. 611; J. L. Riley & Co. v. London Guaranty & Accident Co., 27 Ga.App. 686, 687, 688, 109 S.E. 676; 1 C.J.S., Accord and Satisfaction, § 4, p. 473.

Reversed and remanded.